**Richard G. BEATY, Plaintiff-Appellant,**

**v.**

**Major General T. A. KENAN, Commanding Officer, United States Army Training Center, Ford Ord, California, Defendant-Appellee.**

**No. 24745.**

United States Court of Appeals
Ninth Circuit.

Dec. 23, 1969.

---

6. See In re Potter, *supra*, 367 F.2d at 516–517. But see Broude, *supra*, especially at 333–42.

Charles C. Marson (argued), Staff Council, ACLU, Paul N. Halvonik, ACLU, San Francisco, Cal., for appellant.

Steven Kazan (argued), Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., San Francisco, Cal., for appellee.

Before BARNES, HAMLEY and KILKENNY, Circuit Judges.

BARNES, Circuit Judge:

This appeal involves the obligation of a soldier in the United States Army to clarify his orders to report to duty when such orders contain no specific time for reporting. The extent of that obligation determines the applicability of 10 U.S.C. § 972, and if applicable, the additional time, if any, he must serve in the Army.

Appellant petitioned the district court for a writ of habeas corpus under 28 U. S.C. § 2241(c). Upon denial, an appeal was taken here.

Appellant enlisted for a two year term of Army service on February 9, 1967. He was sent to Germany for training. In Germany appellant volunteered for duty in Vietnam. On November 9, 1967, he received orders authorizing a sixty day leave to permit him to visit his family in California, and instructing him to

report at Fort Lewis, Washington, but not telling him when to so report.

Before the sixty days expired, appellant made two efforts to ascertain when he should report. His first was to a recruiting sergeant in Porterville, California in December 1967. According to appellant's uncontested verified statement (C.T. 22), Sergeant Rockwell told appellant to wait at home for orders or, if he desired, to contact the Army's Classification and Assignment Center in Washington, D.C. On January 15, 1968, no orders having arrived, appellant's parents called the Classification and Assignment Center and were told that their son should await further instructions. No further attempt was made by the appellant or his family to ascertain the reporting date.

On March 30, 1968, almost two months after his leave expired and two and one-half months after his last contact with the Army, Beaty was involved in an automobile accident. The California Highway Patrol was called to the scene and, suspecting that appellant was absent without leave, took him into custody and turned him over to the Shore Patrol at LeMoore Naval Air Station for a routine check of his status with the Army.

Two calls were made by security personnel to Fort Lewis, Washington. The official report of the incident, submitted by appellant as part of his Exhibit A (C.T. 30–33), shows that a Sergeant Loweral, apparently a noncommissioned officer on duty at Fort Lewis stated, during one of the calls, that "[s]ubject was not AWOL * * * and was free to go home and await orders as before." (C.T. 33)

Almost a full year passed after the automobile accident that prompted the communication between LeMoore Naval Air Station and Fort Lewis. During that period, appellant made no further attempts to clarify his status with the Army. Then, on March 17, 1969, five weeks after his original termination date, appellant appeared at Fort Ord, California and requested his discharge.

The Commanders of both Fort Ord and the Sixth Army recommended that appellant be discharged (C.T. 20, 21, 39), but the Secretary of the Army, upon reviewing substantially the same record as was before the district court, found that appellant had been absent from duty without authority from *January 29, 1968*, the day his sixty day leave expired, until February 8, 1969, his termination date (C.T. 40.)[1] Therefore, according to the Secretary, he was liable to make-up time under 10 U.S.C. § 972. Orders were then issued to appellant on July 5, 1969 to report to Fort Ord for another year in the service.[2]

It is not urged that the recruiting sergeant had any authority to speak for the Army. It is undisputed that all other Army personnel did have such authority.

Appellee suggests that appellant had a continuing duty to ascertain when he should have reported, although no precise number of days, weeks or months are suggested as to how often that duty required action on appellant's part, assuming that such obligation began on January 9, 1969.

Contrary to the specific findings of the Secretary of the Army, counsel for the government conceded that appellant had made a reasonable effort to ascertain his status between January 29, and March 30—the period between the expiration of appellant's leave and the auto accident that prompted the phone call from LeMoore Naval Air Station to Fort Lewis (R.T. 55, 18, 30). Notwithstanding its concession that appellant had *not* been absent during this two month

---

1. Counsel for the Government submitted the case to the district court with the concession that appellant had been away from duty without proper authority only after April 15, 1968.

2. On August 28, 1969, this court refused to stay the enforcement of appellant's orders. On August 31, 1969, appellant was sent to Vietnam. We ordered this appeal expedited under Rule 2, Fed.R. App.Proc.

period after his leave expired, the Government contended that the affirmative duty to contact the Army arose again on April 15, two weeks after appellant had been informed that he was free to go home and await orders. The Government characterized this as a "reasonable time" after which "it was his duty again to try to ascertain his status." (R.T. 30)

The district court concluded that appellant had been absent from duty without authority "from April 15, 1968 through March 17, 1969 (sic);"[3] (C.T. 42) that appellant's absence had been determined by competent authority; that there was basis in fact for that determination; and finally, under 10 U.S.C. § 972 and Army Regulation 635–200, that the Government was legally entitled to order appellant to further duty.

There are two issues presented in this case: (1) Is appellant's resort to habeas corpus barred because of his failure to exhaust administrative remedies by not appealing to the Board for Correction of Army Records (10 U.S.C. § 1552)? (2) Was there a basis in fact for the Secretary of the Army to conclude appellant had been absent from duty from April 15, 1968 through February 8, 1969, and thus had made himself liable for additional service under 10 U.S.C. § 972?

In the recent case of Craycroft v. Ferrall, 408 F.2d 587 (9th Cir.1969), we discussed the reasons that we felt compelled the application of the exhaustion of remedies rule as a prerequisite to judicial review of military determinations denying conscientious objector status to in-service personnel.[4] We stated at 594:

"Among these purposes, all of which generally point to the efficient functioning of our federal legal system, are the following: (1) to avoid excessive encroachment by the judiciary into areas designated by the Constitution or Congress to be within the fundamental responsibility of the legislative or executive branches of the federal government; (2) to avoid interference with the orderly functioning of the administrative process; (3) to discourage a party from 'shopping' for a favorable forum; (4) to relieve the courts of the necessity of deciding constitutional questions or interpreting statutes in matters of public import when recourse to administrative channels might supply relief or moot the controversy; [footnote omitted] (5) to require administrative completion of a record involving special areas of administrative expertise or * * * to avoid advisory opinions and to conserve judicial energies in cases wherein, if action taken at a lower level of the administrative hierarchy is affirmed, the aggrieved party presumably could yet hope for relief by pursuing his administrative appeals. [citation omitted]"

We also observed that there might be exceptional cases in which review of military decision-making would be appropriate without compliance with the exhaustion rule.

"* * * it is unlikely that a court would require exhaustion if an administrative body's actions constituted a readily discernible error of a type unlikely to be corrected by further recourse to the administrative process and resulting in great injury to a party or to the public. It is also reasonable that a court should relax the requirement of exhaustion in a case that

---

3. Judge Sweigert probably meant the period from April 15, 1968 to *February 8, 1969*, the latter date being appellant's termination date. Although appellant did not report for his discharge until March 17, 1969, he could in no way be charged with the time between February 8 and March 17, 1969.

4. Our recent decisions of Krieger v. Terry, 9 Cir., 413 F.2d 73, decided June 25, 1969, and Bratcher v. McNamara, 9 Cir., 415 F.2d 760, decided August 12, 1969, applied the reasoning of *Craycroft* to foreclose review of denial of conscientious objector status when in-service administrative remedies had not been exhausted.

can be decided only by the determination of an issue not addressed to an area of administrative judgment." *Id.*

We think appellant's case falls within the "exceptions" mentioned in *Craycroft* for the following reasons: *First,* we note that this case, involving as it does the highly infrequent concurrent negligence of both the Government and a serviceman, is not likely to increase resort to the federal courts.

*Second,* we conclude that, unlike the *Craycroft* case, judicial review of these issues does not present any significant threat to the integrity of the military administrative machinery. We reach this conclusion because of the infrequency of this kind of case, and because of the unlikelihood that a recommendation of the Board for the Correction of Army Records, even if favorable to appellant, would be followed by the Secretary of the Army, who has already reviewed the case and decided the issues against the appellant.[5]

*Third,* we think our decision of the novel issues in this case will not judicially encroach on any area reserved by the Constitution to the legislative or executive branches of the Government. We are led to this result by our belief that issues we decide are essentially legal, involving statutory interpretation of the duties imposed by Congress on citizens while serving in the Armed Forces.

*Fourth,* we believe our explicit restriction of this decision to these facts provides an added prophylactic against the potential evils of premature judicial review that were the basis of our decision not to reach the merits in *Craycroft, supra.* We thus reiterate our conclusion that the district court did not abuse its discretion in deciding the case.

▮ Appellant urges that any continuing duty on his part to ascertain when he was to report was accompanied by a continuing duty for him to obey orders.

Had appellant sat at home and done nothing to ascertain when the Army wanted him, he would have violated his continuing duty to attempt in good faith to ascertain his status. Here we must consider not only the original order, but the subsequent advice and information— all (with the exception of that from the recruiting sergeant) being Army officials of greater or lesser degree speaking for the Army, and with full authority to so speak.

The Army lost appellant in its vast organization. The Army couldn't find his place in it, despite his efforts to convince its representative something was wrong.

If, as the Government concedes, he was not AWOL from January 29, 1968 to March 30, 1968, and had made reasonable efforts during that time to clarify his status, we find no basis in fact for holding that two weeks later, on April 15, 1968, he was under a duty to seek further information. In conceding the reasonableness of appellant's action from January 29 to March 30, the Government vitiated any basis in fact for claiming that appellant was again under a duty to clarify his status a *mere two weeks* after LeMoore Naval Air Station directly contacted Fort Lewis and was told "[s]ubject was not AWOL and was free to go home and await orders as before." We think it important to note that the conceded reasonableness of appellant's action in February and March was based upon (1) the December contact with the recruiting sergeant in appellant's hometown (C.T. 22), and (2) his parents' call to Washington on January 15 (C.T. 28). If these actions justified the absence of appellant for the two month period conceded by the Government, we think that appellant was justified in relying for a further period of time on the information he received *di-*

---

5. Moreover, we observe from the record that petitioner's extended service time terminates on January 5, 1970. (C.T.

15) We think at this late date appellant's relief, if any, must come from this court.

*rectly* from Fort Lewis while his status was being checked at LeMoore on March 30.

Sometime before February 9, 1969, when his enlistment ended, and before March 17, 1969, when he requested his discharge, the Army should have caught up with him. It did not do so, and in the unique posture of the facts of this case, we can find no basis in fact for holding appellant violated his "continuing duty" to use reasonable efforts to ascertain what his Army orders were.

The order denying the writ is vacated, the writ is granted, and the mandate ordered to be issued forthwith by the Clerk.