David Dee **MOORE**, Plaintiff,

v.

Anthony J. **DALESSIO** et al., Defendants.

**Misc. Civ. No. 71–120.**

United States District Court,
D. Massachusetts.

Oct. 7, 1971.

Roger C. Park, Zalkind, Klubock, Silverglate, Boston, Mass., for plaintiff.

Asst. U. S. Atty. Robert B. Collings, for defendants.

## MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

GARRITY, District Judge.

David Dee Moore, a member of the United States Army presently on active duty stationed at Fort Devens, Massachusetts, has petitioned the court for a writ of habeas corpus and other appropriate relief, basing his claim upon the asserted invalidity of his enlistment into the Army and upon the alleged application of an improper standard in the resolution of his in-service conscientious objector claim. Jurisdiction is based on 28 U.S.C. §§ 1361, 2201, and 2241. The parties have submitted briefs and exhibits, and the court has heard oral argument.

### Findings of Fact

1. Plaintiff is a Private First Class in the United States Army and is presently attached to Company H, United States Army Security Agency Regiment, Fort Devens, Massachusetts.

2. Defendants are, respectively, the Commanding Officer of Company H, the Commanding Officer of Fort Devens, the Secretary of the Army and the Secretary of Defense.

3. Local Selective Service Board No. 84, Sedalia, Missouri, ordered plaintiff on February 24, 1970 to report for induction into the Armed Forces on March 31, 1970.

4. By letter dated March 16, 1970 from the Acting State Director of Missouri State Headquarters, Selective Service System to United States Army Recruiting Main Station, Kansas City, Missouri, the Recruiting Station was authorized to enlist plaintiff. A copy of this letter was sent to Local Board No. 84. The letter stated that the outstanding induction order was not to be cancelled until "a DD Form 53 is received by the local board * * *."

5. Plaintiff enlisted in the Delayed Entry Program of the United States Army Reserve on March 31. Under the terms of his enlistment contract, plaintiff was obligated to serve six years and to commence active duty on July 28, 1970.

6. Upon entering active duty on July 28, plaintiff signed a second enlistment contract, thereby exercising an option made available to him to join the Regular Army Security Agency for a period of four years.

7. Subsequent to plaintiff's enlistment in March, Local Board No. 84 met on April 1 and reclassified him 1–D as an enlisted member of a reserve component.

8. DD Form 53 having been received on July 31, the Board again met on August 5, and plaintiff was reclassified 1–C as an enlisted man in the Regular Army.

9. On May 12, 1971 plaintiff requested a discharge from the Army on the basis of conscientious objection. This request was accompanied by various supporting letters.

10. Plaintiff's request was disapproved by opinion of the Conscientious Objector Review Board on August 2, 1971. The reasons for the Board's decision are set out in the opening paragraph of its opinion:

> No vested right exists for any person to be discharged from the Army at his own request, even for conscientious objection, prior to the expiration of his term of service. Discharge for conscientious objection is at the grace of the Secretary of the Army and the applicant bears the burden of clearly establishing that he meets the requirements provided by the Secretary * *. The Board finds that Pvt. Moore has not satisfied this burden. He lacks the depth of conviction required to qualify for discharge as a conscientious objector. He does not clearly establish that his conscience, spurred by deeply held moral, ethical, or religious beliefs, would give him no rest or peace if he allowed himself to remain a part of an instrument of war.

*Conclusions of Law*

Upon the facts outlined above, the first issue ·squarely presented is whether plaintiff's enlistment on March 31, 1970 is unlawful under 50 U.S.C. App. § 465 (d) and a recent case in this District, Abbe v. Local Board 80, D.Mass., 1971, Civil Action No. 70–1337–M, applying that section. Section 465(d) provides "that no person shall be accepted for enlistment after he has received orders to report for induction * * *." In *Abbe,* as here, plaintiff had enlisted in the Army Reserve Delayed Enlistment Program while under a valid, though postponed induction order. The court ruled that § 465(d) rendered Abbe's enlistment unlawful and held that the Army could not "act with relation to [him] as if he is subject to the jurisdiction of the Army based on the purported enlistment on February 20, 1970."

The government has argued that Moore presently is serving under the July 28 contract, a contract which presumably postdates the period when the induction order was in effect, thus distinguishing this case from *Abbe.* We do not accept this distinction. Petitioner was obligated under the March contract to serve for a period of six years. Even if the July contract operated to shorten that term to four years and change the type of service involved, this second contract merely altered, and did not create, petitioner's basic obligation to serve. In this regard, it is more realistic to view the July agreement as a modification of a prior contract rather than as a new and separate agreement. And, focusing thus on the March enlistment, the facts here and in *Abbe* are in all important aspects identical.

■■ Although it would seem beyond dispute that Moore's enlistment was unlawful and that he ought to be discharged,

the court nevertheless believes that this petition should be denied for failure to exhaust an available administrative remedy.[1] Under Army Regulation 635–200, a procedure is provided within the military for the resolution of claims of erroneous enlistment. Petitioner has made no effort to utilize this procedure. In weighing the applicability of the exhaustion doctrine, the Army should, wherever possible, "be given a chance to discover and correct its own errors." McKart v. United States, 1969, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194; see Breinz v. Commanding General, 9 Cir., 1971, 439 F.2d 785, 786. Assuming, as we must, that the Army will do so in good faith in this case and in others like it, "the courts may never have to intervene." *Id.*

■ Petitioner argues, however, that he should not be required to seek redress within the procedures of the very institution whose jurisdiction over him he challenges. It is clear that a federal court may assume jurisdiction to determine the limited question of whether it truly has jurisdiction over the parties to, or subject matter of, a suit. United States v. United Mine Workers of America, 1947, 330 U.S. 258, 290, 67 S.Ct. 677, 91 L.Ed. 884. The court perceives no reason in law or logic why Regulation 635–200 should not similarly be interpreted to create such limited jurisdiction. Otherwise, the following anomaly would result: in every instance where an invalid enlistment had occurred and a serviceman had available the procedures of the regulation, he could refuse to invoke them, arguing the very lack of military jurisdiction over him which the procedures were designed to determine. The court is unwilling to so apply this useful, corrective regulation as to render it of no effect.

In addition, the cases cited by petitioner in support of this contention clear-

---

1. Although the plaintiff in *Abbe* extensively briefed the exhaustion of remedies question, the government did not raise it as a defense and the court was therefore not required to rule on it. In addition, since the exhaustion doctrine reflects comity considerations and is not a limita- tion upon federal jurisdiction, see Bowen v. Johnston, 1939, 306 U.S. 19, 27, 59 S.Ct. 442, 83 L.Ed. 455, failure to exhaust does not reach the level of a jurisdictional defect which the court in *Abbe* might have raised *sua sponte.*

ly are distinguishable. Autry v. Wiley, 1 Cir., 1971, 440 F.2d 799, involved a criminal prosecution which the defendant contended could not have taken place absent an invalid extradition. In ruling that "this kind of claim is properly cognizable by a federal civil court without requiring exhaustion," *Id.* at 800, the court relied upon Noyd v. Bond, 1969, 395 U.S. 683, 696, n. 8, 89 S.Ct. 1876, 23 L.Ed.2d 631. Both *Noyd* and *Autry,* however, deal with a military *court's* competence *to try* a criminal defendant, a procedure which may very likely cause substantial hardship where criminal jurisdiction is in fact absent; no similar hardship befalls the petitioner who accedes to the competence of an *administrative* procedure to resolve uncomplex issues of the sort involved here.

In McKart v. United States, 1965, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194, the issue was whether a selective service registrant's failure to appeal an adverse classification by the local board precluded him from asserting his grounds for a deferment in defense of a criminal case for failure to report for induction. In allowing the defense despite defendant's failure to exhaust his right to an appeal within the selective service system, the Court clearly recognized the harshness of denying a valid defense to a criminal defendant. *Id.* at 197, 89 S.Ct. 1657, 23 L.Ed.2d 194. And in Gonzales v. Williams, 1904, 192 U.S. 1, 24 S.Ct. 177, 48 L.Ed. 317, plaintiff, who had already received an adverse ruling by an immigration commissioner as to whether she could be barred as an alien immigrant, was merely relieved of the necessity of prosecuting an appeal within the immigration system; it is clear that *Gonzales* did not hold that an immigrant could entirely bypass the Immigration Service and seek to litigate relevant issues *ab initio* in the federal courts.

Finally, in United States ex rel. Norris v. Norman, N.D.Ill., 1969, 296 F.Supp. 1270, the court refused to apply the exhaustion doctrine to a serviceman's suit for discharge because the government had not indicated to the court "what if

any adequate administrative remedy exists" and because the plaintiff had made repeated attempts to identify and utilize such procedures, only to be advised by authorities "that nothing could be done." *Id.* at 1272. That case is a far cry from this one, where the government has identified available procedures both to the court and to petitioner and where petitioner has made no showing that he has sought to follow such procedures.

While noting that resolution by the Adjutant General of the question of invalid enlistment may obviate any necessity to reconsider the conscientious objection issue, the court nevertheless recognizes that plaintiff has exhausted his administrative remedies as to this issue and that it is properly before the court for decision. The court finds that the standard applied by the Review Board was defective in two ways. First, by requiring that plaintiff "clearly establish" his conscientious objection, the Board applied too stringent a burden of proof. It is sufficient if a petitioner's claim raises proper ethical, moral or religious objections to war in all forms and is unrebutted by evidence of insincerity; in other words, an unrebutted prima facie claim is all that is necessary. Reference in its opinion to "the grace of the Secretary of the Army" and "the requirements provided * * * in the * * * regulation" indicate that the Board applied a more stringent test than is applied in the selective service system. Such disparity in standards is improper, see Silberberg v. Willis, 1 Cir., 1970, 420 F.2d 662, 664, discussing Department of Defense Directive 1300.6(IV) (B) (3) (b), and clearly runs contrary to the reliance placed in the Army's procedure for processing in-service conscientious objector claims by the Supreme Court in Ehlert v. United States, 1971, 402 U.S. 99, 102, 91 S.Ct. 1319, 28 L.Ed.2d 625.

In addition, the Board erred in attempting to weigh the "depth" of plaintiff's conviction rather than its sincerity. The "stage of development" or "depth" or "maturity" of a claimant's intellectual processes is not a valid point of inquiry,

so long as he is sincere in his beliefs. See Bates v. Commander, First Coast Guard District, 1 Cir., 1969, 413 F.2d 475, 480. "One does not have to be a St. Augustine or a Thomas Aquinas to qualify as a conscientious objector * *." Helwick v. Laird, 5 Cir., 1971, 438 F.2d 959, 964. Any other result would unjustly discriminate in favor of those with higher intellect or greater educational opportunities.

No ruling on whether a basis in fact exists to disapprove the plaintiff's request under the proper standards is appropriate here. The issue is remanded to the Review Board for a new determination consistent with this opinion.

Finally, the court orders that plaintiff's pending transfer to Vietnam be stayed until the Adjutant General has ruled upon his claim of invalid enlistment and, if necessary, until the Review Board has had an opportunity to reconsider and rule upon his conscientious objector claim in light of this opinion.

So ordered.