Terrance C. FORBES, Petitioner,

v.

Melvin R. LAIRD, Secretary of Defense, and Robert F. Froehlke, Secretary of the Army, Respondents.

No. 71–C–149.

United States District Court, E. D. Wisconsin.

Nov. 12, 1971.

Cotton, Rose & Rose, by Terry W. Rose, Kenosha, Wis., for petitioner.

David J. Cannon, U. S. Atty., by Terry E. Mitchell, Asst. U. S. Atty., Milwaukee, Wis., for respondents.

DECISION and ORDER

MYRON L. GORDON, District Judge.

The petitioner seeks a writ of habeas corpus. He enlisted in the United

States Army Reserve on December 3, 1968, but did not serve on an active duty basis until March 3, 1969, when he enlisted in the regular army for a period of two years. On August 29, 1969, while stationed at Redstone Arsenal, Alabama, Mr. Forbes received orders to report to the Army Overseas Replacement Station in Oakland, California, on September 24, 1969, for assignment to Vietnam. Shortly thereafter, the petitioner was given leave to go to his parents' home in Kenosha, Wisconsin, before proceeding to Oakland.

On September 14, 1969, Mr. Forbes wrote a letter to the commanding officer at the Overseas Replacement Station in which he requested a 20 day extension of his leave to enable him to finish some personal business in Kenosha. The amended complaint alleges that the petitioner was given "an indefinite extension of his leave until he received new orders." When no new orders were forthcoming, the petitioner avers, he and his parents made numerous attempts to ascertain his status and to determine when and where he should report for duty. Such efforts allegedly were unsuccessful, however, and Mr. Forbes was still at his parents' home when, over 18 months later, on April 9, 1971, he was arrested for being absent without leave from Oakland.

The present action was filed on April 12, 1971; on April 14, 1971, the petitioner was released from the respondents' custody pending a hearing on his application for a writ of habeas corpus. At such hearing, held on April 19, 1971, the respondents' motion to stay the proceedings to enable the Army to make an administrative determination of the petitioner's status was granted; Mr. Forbes' bond was continued and the petitioner was allowed to remain free of the Army's custody.

An evidentiary hearing was held on October 7, 1971. The testimony of the petitioner and his parents was not actually presented, because counsel for both sides stipulated that, if given, such testimony would correspond to the assertions attributed to each of such persons as made in open court by the petitioner's attorney and also as set forth in the petitioner's brief. In addition, certain documents were received into evidence, including a copy of Mr. Forbes' letter of September 14, 1969, a signed return receipt for such letter, a copy of the petitioner's military record, and the investigative file upon which the Army made its administrative determination of the petitioner's status.

The documents show that on September 17, 1969, the petitioner's letter of September 14th was in fact received at the Oakland Overseas Replacement Station; the Army concedes that it has no record of any written reply having been made to such letter, although a memorandum from the office of the judge advocate in Oakland, and contained in the Army's investigative file, maintains that "all [leave] extensions were confirmed by telegram . . . [and] . . . were given for periods not exceeding 10 days." The petitioner's father avers, however, that on or about September 20, 1969, he received a telephone call from an Army officer in Oakland who allegedly told the senior Mr. Forbes that the petitioner's request for an extension of his leave had been granted and that new orders would follow by mail.

When no new orders came, the petitioner asserts that at an unspecified date in the fall of 1969, he called the provost marshal's office at Fort Sheridan, Illinois, told the provost marshal that he had not received the orders, and asked if he was AWOL; he declares that he was told that he was not AWOL "and that he should stay at home until he received new orders." The petitioner's father states that he called Fort Sheridan on the same day and was referred to the "security office" where he was told that his son "was not on the AWOL list and that he should await further orders by mail." The father also states that he was told not to bring his son to Fort Sheridan.

In addition, the petitioner's mother recounted that she called the provost marshal's office at Fort Sheridan several times each month between September, 1969, and March, 1971, and on each occasion was informed that the petitioner was not on the AWOL list and should remain at home; in addition, she claims that she once attempted to place a telephone call to Oakland, but allegedly without success. In March, 1970, Mrs. Forbes called the Florida recruiting office at which her son had enlisted; she declares that she was told "not [to] worry and that the army would issue . . . [the] . . . orders and that . . . [the petitioner] . . . should not leave his . . . [Kenosha] . . . address." The petitioner's brief also states that Mrs. Forbes placed two calls to Fort Sheridan *after* her son's arrest and was told that the petitioner was not on the AWOL list.

During the period prior to his arrest, the petitioner took a job at a factory near his home in Kenosha and filed federal and state income tax returns. He renewed his FAA flying instructor's license; he applied for, and received, a passport; also, he was given a bartender's license by the city of Kenosha. In none of these transactions does it appear that he attempted to conceal his name or identity. In April, 1970, he avers, he was questioned by agents of the FBI regarding another military absentee and identified himself with his military identification card; he states that he told the agents that he (the petitioner) was not AWOL.

On August 6, 1971, the Adjutant General, on behalf of the Secretary of the Army, made the administrative determination that

"PVT Terrance C. Forbes . . . was in a leave status from 24 September 1969 through 14 October 1969; from 15 October 1969 to 19 April 1971 he was in an absent without leave status. However, as a member may not accrue time lost after expiration of his term of service, only the period from 15 October 1969 to 2 March 1971 constitutes time lost under Title 10, United States Code, Section 972."

Thus, the Army has credited the petitioner with an authorized 20 days additional leave, although there is no formal order granting such extension.

10 U.S.C. § 972 provides, in part:

"An enlisted member of an armed force who—

*  *  *  *  *  *

(2) is absent from his organization, station, or duty for more than one day without proper authority, as determined by competent authority;

*  *  *  *  *  *

is liable, after his return to full duty, to serve for a period that, when added to the period that he served before his absence from duty, amounts to the term for which he was enlisted or inducted."

Section 972 is implemented by paragraph 2–3 of Army Regulation 635–200.

The jurisdiction of this court to consider Mr. Forbes' petition for a writ of habeas corpus has not been challenged by the respondents, although it does not appear that, at the time that this action was filed, the petitioner had sought review by the Adjutant General or the Board for the Correction of Army Records (10 U.S.C. § 1552). However, as already noted, the Secretary of the Army since made a final administrative determination that Mr. Forbes was AWOL after October 14, 1969. In addition, it has been held that review by the Board for the Correction of Army Records is not a prerequisite to a petition for a writ of habeas corpus in a "home awaiting orders" case like the one now before this court. Beaty v. Kenan, 420 F.2d 55, 58 (9th Cir. 1969); cf. Breinz v. Commanding General, 439 F.2d 785, 786 (9th Cir. 1971), and Roberts v. Commanding General, 314 F.Supp. 998, 1001 n. 7 (Md.1970).

In passing upon the present petition, it is necessary to determine

whether the Army had any "basis in fact" for extending Mr. Forbes' end of term of service ("ETS") for a period equivalent to that by which he is alleged to have been absent without leave from Oakland. Caraco v. Resor, No. 130–70 (D.C. decided Oct. 12, 1970); Patnode v. Alexander, No. 70–98–H (Md. decided May 6, 1970). Such determination is dependent, in part, upon whether Mr. Forbes initially had "proper authority" for his absence, for 10 U.S.C. § 972, as already noted, states that a serviceman's ETS may be extended if he is absent from duty "without proper authority." Indeed, "[these words] are to be compared and contrasted with the words 'absent without leave' as the latter are used in a court martial sense." Roberts v. Commanding General, supra, at 1005. Upon this standard, I conclude that the petitioner originally was not absent "without proper authority" and that the Army has not shown that it had a "basis in fact" for its administrative determination.

■ Notwithstanding the initial propriety of the petitioner's absence, however, Mr. Forbes had "a continuing duty to attempt in good faith to ascertain his status." Beaty v. Kenan, supra, 420 F. 2d at 59. The respondents contend that they have been unable to confirm the telephone contacts that the petitioner and his parents allegedly made with Fort Sheridan and the Florida recruiting station; furthermore, they state that there was no "security division" at Fort Sheridan in the fall of 1969. On the other hand, it is uncontroverted that the petitioner sent a letter to the commanding officer at Oakland and that he received a return receipt for such letter. It is similarly uncontroverted that, throughout the period in question, the Army possessed the petitioner's home address; in fact, the Army states that it sent a "next of kin" letter to the petitioner's father in January, 1971, in which it inquired into the petitioner's whereabouts, although the senior Mr. Forbes asserts that he never received the letter. The petitioner lived openly and without concealment at the Kenosha address during the entire period in question.

■ With the exception of the "next of kin" letter—allegedly sent only six weeks before the petitioner's arrest—the Army made no apparent attempt to locate the petitioner after he left Redstone Arsenal in early September, 1969. While the petitioner's efforts to contact the Army are not of the quality found in Beaty v. Kenan and Patnode v. Alexander, supra, I am not willing to find that Mr. Forbes violated his "continuing duty" to determine his status. The statements of the petitioner and his parents with reference to their numerous calls to Fort Sheridan are not inherently incredible. That Fort Sheridan was a reasonable place for the petitioner to go for aid is illustrated by a telegram received by him, after his arrest, from a United States senator which stated, in part, "Suggest that you proceed to Fort Sheridan and fully explain and discuss situation."

Obviously the better course would have been a personal appearance by Mr. Forbes at Fort Sheridan or Oakland and an insistence that his status be clarified; similarly, it may be said that the petitioner should have written letters instead of telephoning. Notwithstanding these considerations, however, this court is confronted with the apparent fact that "the Army lost . . . [the petitioner] . . . in its vast organization." Beaty v. Kenan, supra, 420 F.2d at 59. Mr. Forbes' petition for a writ of habeas corpus must be granted.

Therefore, it is ordered that the petition for a writ of habeas corpus be and hereby is granted.