Anthony EMMA, Petitioner-Appellee,

v.

DeWitt C. ARMSTRONG, III, Brigadier
General, United States Army Command-
ing General, Fort Devens, Massachu-
setts, et al., Respondents-Appellants.

No. 72–1136.

United States Court of Appeals,
First Circuit.

Argued Nov. 7, 1972.

Decided Feb. 1, 1973.

Robert E. Kopp, Atty., Dept. of Justice, with whom E. Grey Lewis, Acting Asst. Atty. Gen., Joseph L. Tauro, U. S. Atty., and Morton Hollander, Atty., Dept. of Justice, were on brief, for respondents-appellants.

Robert J. DeCesaris, Warwick, R. I., for petitioner-appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

ALDRICH, Senior Judge.

Emma, an enlisted man, returned from a tour of duty in Vietnam with a pending request for a discharge. At Fort Lewis, Washington, he signed for expenses to proceed to Fort Bliss, Texas, and went home for a month's leave to Rhode Island. The district court found that he did not read what he had signed and thought he was to await his discharge, or further instructions, at home.[1] When, after two months, he heard nothing, he brought his personal file and inquired orally at the Providence, Rhode Island, Recruiting Station, and was advised to do nothing.[2] A few months later he inquired a second time, and received the same advice. Another year then passed, and with it his four year active enlistment (to be followed by two years in the Reserves) ran out. He then went to Fort Devens, Massachusetts, the nearest Army post to his home, and where he had made inquiry some years before when his orders had been lost, and requested his discharge papers. He was told that pursuant to Army regulations[3] he must, although not listed as AWOL, remain at the post while inquiry was pursued. He declined, and then, after a further request for processing to Fort Devens was not met for that reason, brought this petition for habeas corpus in the Massachusetts District Court seeking his discharge, naming the Fort Devens Commandant and the Secretaries of Defense and of the Army as respondents.

Respondents objected to the jurisdiction of the court, and raised other objections. After hearing, the court granted the requested relief and respondents appeal.

■ With respect to jurisdiction, although the question is close, we accept the court's finding that, although he had no previous connection therewith, Emma had established "meaningful contact" at

---

1. In so doing the court concededly rejected evidence that would have permitted a finding that while Emma hoped for a discharge, he knew he was ordered to report to Fort Bliss, in the absence of receiving such, at the end of his leave.

2. We need not pass upon the force of a claim that action was a submission to

military control, and that Emma was not "absent" thereafter, but we do say that the recruiting station might be said to be at fault in not notifying its superiors. See AR 190–9:1–3a–3g; 190–9:3–4.

3. 10 U.S.C. § 972; AR 630–10, Sec. V, ¶¶ 4–22 to 4–26.

Fort Devens within Strait v. Laird, 1972, 406 U.S. 341, 343, 92 S.Ct. 1693, 32 L.Ed.2d 141. It is true that he did not submit himself to full custody, as in Meck v. Commanding Officer, 3 Cir., 1971, 452 F.2d 758, and we would have felt differently had this episode occurred a short while after he was supposed to have reported to Fort Bliss. Here, however, the claim of that location had become significantly attenuated. Nor was this a case where administrative convenience, or the policy against forum-shopping, has been frustrated; Fort Devens, under the unusual circumstances of this case, was the natural place for him to go.

Jurisdiction is far, however, from the only problem. The court does not care for now-you-see-it, now-you-don't, and would be unsympathetic with the contention that Emma had sufficient connection with Fort Devens to give the court jurisdiction, but not enough to give personal control to the Army. However, we need not reach that question. There is an overriding issue, the matter of exhaustion of remedies. The court found that Emma had done all that was required because the Army impermissibly refused to process his case due to his failure to "return," [4] which the Army construed to mean not simply to report in, but to remain. The court disagreed. "To apply a stricter meaning of the word to the instant facts would result in plaintiff's spending an unspecified amount of time in the Army, when, as we have already found, he has no continuing obligation to serve."

 Quite apart from the question whether it was open to the court [5] so to construe an Army regulation whose ex-

tensive provisions, see AR 630–10, Chapter 4, Return to Military Control, are all cast in terms of remaining under complete control, the court's approach was classic bootstrap. The court was not entitled to find "no continuing obligation to serve." The cases are uniform that mere expiration of time does not effect an automatic discharge. Dickenson v. Davis, 10 Cir., 1957, 245 F.2d 317, cert. denied 355 U.S. 918, 78 S.Ct. 349, 2 L. Ed.2d 278; United States ex rel. Parsley v. Moses, D.N.J., 1956, 138 F.Supp. 799; Roman v. Critz, W.D.Tex., 1968, 291 F. Supp. 99; Messina v. Commanding Officer, S.D.Cal., 1972, 342 F.Supp. 1330. See also United States v. Downs, 3 U.S. C.M.A. 90, 11 C.M.R. 90 (1953), United States v. Scott, 11 U.S.C.M.A. 646, 29 C.M.R. 462 (1960). Emma's right to a discharge was conditioned not only on a finding that he was truthful in disclaiming knowledge of his orders to report to Fort Bliss, but that he acted reasonably thereafter. As to these the burden was on him. Roberts v. Commanding General, D.Md., 1970, 314 F.Supp. 998, 1002. The court conceded the evidence was conflicting as to the first issue, and we find it at least arguably so as to the second.[6] On such factual issues the Army was entitled to make the initial determination. Breinz v. Commanding General, 9 Cir., 1971, 439 F.2d 785. See, generally, McGee v. United States, 1971, 402 U.S. 479, 486, 91 S.Ct. 1565, 29 L. Ed.2d 47. Exhaustion has been required even where the validity of the initial enlistment is the issue. See Moore v. Dalessio, D.Mass., 1971, 332 F.Supp. 926. Although couched differently, what the court did was to make its own findings, and then conclude that there was no issue left to exhaust.

---

4. Army Regulation AR 630–10, § 4–22, provides as follows: "Whenever a member is absent under circumstances which make it appear that he was absent without leave, his commanding officer will conduct an informal investigation into the facts of the case immediately upon the member's return. . . ."

5. It is normally for the Army to construe its own regulations. Ehlert v. United

States, 1971, 402 U.S. 99, 105, 91 S.Ct. 1319, 28 L.Ed. 625.

6. Quite apart from the possibility of an inference that before 19 months had expired without a word a reasonable man would believe something had gone wrong, Emma had been "lost" before, and had discovered the solution at Fort Devens.

Until formally reduced to reserve status, Emma was in the Army on active duty. Dickenson v. Davis, ante. The Army must run its own show, absent some lack of due process or other constitutional error, regardless of whether a court might think the facts wrongly resolved or some particular requirement unnecessary. Orloff v. Willoughby, 1953, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842; cf. Cortright v. Resor, 2 Cir., 1971, 447 F.2d 245, cert. denied sub nom. Cortright v. Froehlke, 1972, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240. Until his status was formally changed, Emma should have reported, as requested, to Fort Devens to stay. We do not think such a requirement to be outside the Army's powers.

█ It has been suggested that the present proceedings should be stayed while Emma, in a way we should determine to be reasonable,—viz., free on bond, exhausts his Army remedies. Such early invocation of our jurisdiction is to be sought only to avoid serious harm, which is absent here even though Emma finds the Army procedure not to his liking. While we do find three courts where this procedure was adopted, in Roberts v. Commanding General, ante, an perhaps in Forbes v. Laird, E. D.Wis., 1971, 340 F.Supp. 193, it was at the government's request, and in the third, Beaty v. Kenan, 9 Cir., 1969, 420 F.2d 55, it does not appear who requested it. We find no case affording such relief over the government's asserted objection. We will not be the first.

█ Nor do we agree with Chief Judge COFFIN that we should order that when, as a result of our decision, Emma reports to Fort Devens for processing, he be excused from any confinement or duty that regulations or army practice would otherwise impose. Even though we might agree that the army requirements that are asserted by Emma are uncalled for, only in exceptional cases can it be our concern how the Army conducts its affairs. We cannot regard the "confinement" referred to as of such magnitude as, in itself, to

warrant habeas corpus relief. To grant such relief as "pendent" to a proceeding, the basic thrust of which was premature, could only place a premium on premature litigation, cf. Belbin v. Picard, 1 Cir., 1972, 454 F.2d 202, 204, an unwarranted burden on the Army as well as on the courts.

The order of the district court is vacated and the case remanded with instructions to dismiss the petition.

COFFIN, Chief Judge (dissenting in part).

I have no difficulty in agreeing with the court that habeas corpus jurisdiction lies in the district court. I have more difficulty in agreeing that exhaustion of petitioner's military administrative remedies is required before we can give any relief at all, even if he were to present a substantial claim that the military's jurisdiction over him had terminated, when a substantial challenge to the military's right to try a serviceman for a non-service-connected crime by court-martial, O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), may not be subject to exhaustion, Noyd v. Bond, 395 U.S. 683, 696, n. 8, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969); Lyle v. Kincaid, 344 F.Supp. 223, 224 (M.D.Fla.1972). Yet I do agree that the distinction between exhaustion of military administrative and military judicial remedies is very much alive. See Parisi v. Davidson, 405 U.S. 34, 37, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972). But cf. Scaggs v. Larsen, 396 U.S. 1206, 1209, 90 S.Ct. 5, 24 L.Ed.2d 28 (Douglas, Circuit Justice, 1969). Even if complete exhaustion may not always be required, Beaty v. Kenan, 420 F.2d 55 (9th Cir. 1969), petitioner has yet some distance to travel before a court might order his discharge.

However, I depart from the court's view in saying that it is of no concern to us how petitioner may be treated while he exhausts his remedies. I see no advantage to the military and considerable injustice to petitioner in retaining him in custody in the event that he ultimate-

ly prevails, and no disadvantage to the military if he does not—since the time would thereafter be served.* But here the Army, for reasons best known to it, wants petitioner at Ft. Devens and I find no hard authority for denying its request. My disagreement is reduced to what the court considers a premature issue—the legitimacy of applying to petitioner in these circumstances the routine Ft. Devens policy of confining returnees in a fenced-in "personnel control facility" for two weeks. No reason, security or other, being advanced, I can only attribute a punitive one, i. e., punishment before the merits are resolved, which seems improper on its face. United States ex rel. Chaparro v. Resor, 412 F. 2d 443 (4th Cir. 1969). I would therefore follow the procedure in *Noyd, supra* at 699, by giving the Army the option to treat petitioner like other non-offending servicemen and not confine him. If it does not choose this path, I would stay its action to give petitioner the opportunity to present his arguments on the confinement issue to the Court of Military Appeals.

---

* I am influenced by my view of the merits of petitioner's case, which is perhaps more favorable than that of the court. Petitioner's voluntary appearances before the Providence recruiter, who was obliged to report petitioner as having returned to military control, see AR–190:1–3a, 190–9:3–4, 190–9:1–3g, 630–10:1–3g, and other circumstances give his claim comparable strength to those other "lost servicemen" whose claims have been upheld. *See* McFarlane v. DeYoung, 431 F.2d 1197 (9th Cir. 1970); Forbes v. Laird, 340 F.Supp. 193, 196 (E.D.Wis. 1971); Patnode v. Alexander, 3 S.S.L.R. 3328 (D.Md.1970) (period of Jan. 1967– Feb. 1969).