**Robert W. AUKEE, Petitioner,**

v.

**Major General Charles W. CARLSON, General of the U. S. Air Force, Respondent.**

**No. A–149–73 Civil.**

United States District Court, D. Alaska.

Oct. 30, 1973.

Douglas B. Baily, Anchorage, Alaska, for plaintiff.

G. Kent Edwards, U. S. Atty. for Alaska, Anchorage, Alaska, for defendant.

---

## MEMORANDUM AND ORDER

von der Heydt, Chief Judge.

This matter comes before the Court on respondent's motion to quash order to show cause, and on respondent's motion to dismiss.

Petitioner is a dental officer in the United States Air Force. Respondent is the officer having discharge authority over petitioner. At some time prior to entering active duty, petitioner received an Extended Active Duty Order, dated May 25, 1971, assigning him to Elmendorf Air Force Base Hospital. Apparently because of clerical error, that portion of the order which indicates the period of petitioner's active duty was left blank. Petitioner subsequently received an amendment to his order, which amendment was dated July 26, 1971, in which the period of his active duty was stated to be "For a period of *24 months* unless sooner relieved." On the face of the original active duty order and the amendment petitioner's active duty period was to expire in July of 1973. Petitioner brought this action pursuant to 28 U.S.C. § 2241 et seq., seeking a writ of habeas corpus directing respondent to discharge petitioner from the custody of the United States Air Force.

On October 4, 1973, respondent filed the motion to quash order to show cause on the ground that respondent had not been served with a copy of petitioner's writ of habeas corpus. The defect has been corrected by service of that pleading, with the result that the motion now is moot.

On October 9, 1973, respondent filed an answer to the order to show cause. Therein respondent stated that assignments to military bases in the State of Alaska constituted overseas tours of duty; that if a military member serves such a tour of duty accompanied by his dependents, AFR 36–20 requires the military member to serve a 36 month tour of duty; that on April 22, 1971, petitioner elected to serve an accompanied tour of duty with knowlege of the 36 month tour of duty requirement, and that petitioner executed another document on August 6, 1971, by which petitioner expressly agreed to "remain on extended active duty for a period of 36 months for the purpose of completing an accompanied overseas tour of duty . . . ." Respondent's answer to the order to show cause was thoroughly documented.

On October 17, 1973, respondent filed the motion to dismiss on the ground that petitioner has failed to exhaust his administrative remedies. Respondent has shown the existence of two administrative remedies which are available to petitioner. First, petitioner could apply for an administrative release from extended active duty pursuant to the provisions set forth in AFR 36–12, paragraph 62. Alternatively, petitioner could petition a Board of Correction of Military Records to correct his military record or to remove an injustice under the procedures outlined under 32 CFR 865. The record indicates that petitioner has not attempted any administrative relief, but has chosen to apply directly to this court.

Respondent has cited numerous authorities for the proposition that a federal court is without jurisdiction to interfere with the internal military matters until all administrative remedies have been exhausted. Petitioner has unsuccessfully attempted to distinguish those authorities by reason of their factual contexts. The policy considerations underlying the doctrine of exhaustion of administrative remedies is best stated in McKart v. United States, 395 U.S. 185, 193–195, 89 S.Ct. 1657, 1662–1663, 23 L. Ed.2d 194 (1969):

> . . . A primary purpose is, of course, the avoidance of premature interruption of the administrative process. The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency

decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages. The very same reasons lie behind judicial rules sharply limiting interlocutory appeals.

Closely related to the above reasons is a notion peculiar to administrative law. The administrative agency is created as a separate entity and invested with certain powers and duties. The courts ordinarily should not interfere with an agency until it has completed its action, or else has clearly exceeded its jurisdiction. As Professor Jaffe puts it, "[t]he exhaustion doctrine is, therefore, an expression of executive and administrative autonomy." This reason is particularly pertinent where the function of the agency and the particular decision sought to be reviewed involve exercise of discretionary powers granted the agency by Congress, or require application of special expertise.

. . . Particularly, judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise. In addition, other justifications for requiring exhaustion in cases of this sort have nothing to do with the dangers of interruption of the administrative process. Certain very practical notions of judicial efficiency come into play as well. A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. And notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors. Finally, it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures. [citations omitted].

For the reasons stated in *McKart*, this court reaches the conclusion that the doctrine of exhaustion of administrative remedies is fully applicable here under the operative facts and circumstances of the case. It is true that a few very narrow exceptions to the applicability of the exhaustion doctrine exist, but the court does not find that the facts of the instant case warrant an exception to the application of the exhaustion doctrine. Beaty v. Kenan, 420 F.2d 55 (9th Cir. 1969). As previously noted, petitioner has not availed himself of either of two adequate administrative remedies. That factor readily distinguishes this cause from *Beaty*, wherein the appellate court found that further appeal from the Board of Corrections of Records would be a futile exercise in view of the unlikelihood that the Secretary of the Army, who had earlier reviewed the case, would reverse himself. Breinz v. Commanding General, Fort Lewis, Washington, 439 F.2d 785 (9th Cir. 1971).

Therefore, It Is Ordered:

1. That respondent's motion to quash order to show cause is denied as being now moot.

2. That respondent's motion to dismiss is granted and the petition is dismissed.

3. That respondent's counsel forthwith may prepare an appropriate judgment of dismissal.