Larry G. POTTER, Petitioner,

v.

Dr. P. J. CICCONE, Director, United States Medical Center for Federal Prisoners, Springfield, Missouri, Respondent.

Civ. A. No. 18263-3.

United States District Court, W. D. Missouri, W. D.

June 24, 1970.

J. Martin Kerr, UMKC Legal Assistance Program, Kansas City, Mo., for petitioner.

Frederick O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., for respondent.

## ORDER DENYING PETITION FOR HABEAS CORPUS

BECKER, Chief Judge.

In petitioner's prior petition for habeas corpus, Potter v. Ciccone (W.D.Mo.) Civil Action No. 18184-3, he complained that he was placed in the Kankakee, Illinois, jail without cause and retained there for an unreasonable time without medical treatment. Since petitioner did not thereby state any denial of his federally protected rights by the respondent (the Director of the United States Medical Center for Federal Prisoners), the petition was denied on March 23, 1970, without prejudice to any remedies which petitioner might have under the Federal Civil Rights Act, Sections 1981–88, Title 42, United States Code, or conceivably under Section 2255, Title 28, United States Code, to challenge his federal conviction in the committing court upon these grounds.

On March 20, 1970, a letter from petitioner dated March 18, 1970, was received in this division. In pertinent part, it stated:

"On August 7th 1969 I was sent to the Chicago halfway house from Milan, Michigan. I stayed about a month and ran off I was mixed up. So I went to Kankakee, Ill. and committed a break in which is a felony I was out of my head by then. I was arrested Nov. 17th 1969 by the Kankakee Police and put in jail I seen a FBI agent the same day so he call D. C. and told them I had been caught. I stayed in jail 3 months and then I went to court while I was in jail The court had 2

mental doctors to see me after they seen me they told the court that I was mentally incompetent so the court committed me to the Illinois Mental Health and Walfare Department that was Feb 3 or 4, 1970, on Feb 5 1970 I was taken to the Kankakee State Hospital and was comitted. I was put on the intensesive care ward because I was on medication 100 mg. thorozine that night at 8:00 P. M. the federal Marshals came in and took me out forcefully I was not released by any doctors for I was just committed. They took me 80 miles away to the county jail at Danville, Ill. I was there 5 days then sent to Terre Haute. Right now I am sitting in a cell in the Springfield Hospital. I am receiving no help at all and it is not because I don't want it. Its because this is not a mental hospital. I am only asking that I can go back to the Kankakee State Hospital and get help." (sic)

Since, if read liberally, in the light of the command of the United States Supreme Court in Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148, the petition might thereby have stated the denial of one or more of petitioner's federally protected rights, the letter of March 20, 1970, was treated as a successive petition for habeas corpus, petitioner was granted leave to file it in forma pauperis, and respondent was ordered to show cause within 20 days why the writ of habeas corpus should not issue, granting the relief prayed by petitioner. After an extension of time was granted by the Court, respondent's response to the show cause order was filed on May 13, 1970. Therein, respondent averred that "petitioner was sentenced in the United States District Court for the District of Utah, under the provisions of 18 U.S.C. §§ 5010(b) and 5017(c), upon his plea of guilty to violation of 18 U.S.C. § 2312 (Dyer Act)"; that "[o]n June 27, 1967, petitioner was released on parole from the Community Treatment Center (CTC) at Chicago, Illinois, with supervision until March 28, 1971"; that "[o]n February 15, 1968, a parole viola-

tor warrant was issued against petitioner * * *, the parole violator warrant was executed, and petitioner was committed to the Federal Correctional Institution at Milan, Michigan on March 28, 1968"; that "[o]n August 7, 1969, petitioner was transferred to the Community Treatment Center at Chicago, Illinois"; that "[o]n September 15, 1969, petitioner absconded from the Chicago Community Treatment Center"; that "[o]n or about November 17, 1969, petitioner was arrested by the police in Kankakee, Illinois on a burglary charge and was confined in the Kankakee Jail"; that "[i]n February of 1970, the Illinois State charges against petitioner were dismissed, and he was placed in a mental institution in that State"; that "[o]n February 6, 1970, petitioner was taken into federal custody as an escaped federal prisoner, and that on February 12, 1970, petitioner was transferred to the United States Penitentiary, Terre Haute, Indiana"; that "[o]n March 4, 1970 petitioner was received at the United States Medical Center for Federal Prisoners, Springfield, Missouri from the Federal institution at Terre Haute"; and that "computed uninterruptedly from the date of his conviction on March 29, 1965 in accordance with 18 U.S.C. § 5017(d)," petitioner's sentence "expires at full term on March 28, 1971." Respondent therefore contended that petitioner was in lawful custody.

On May 18, 1970, the Court entered its order expressly inviting petitioner to file a traverse to the response within 10 days, in which traverse petitioner should admit or deny the factual allegations of the response. Petitioner submitted his letter dated May 18, 1970, which he requested be accepted as a "legal traverse" and which was accordingly filed herein on May 22, 1970. That letter as written is as follows:

"I received your order directing me to file a travers to Dr. Ciccone's response to this show cause order.

"Sir: I do not know how to file a travers and I have no one here to help me.

"Will you please except this as a legal traverse? I will give all the facts that the Honorable Judge Becker wants me to answer to.

"I deny Dr. Ciccone's answer to the show cause order that was issued to him by Judge Becker. Dr. Ciccone's response is not correct.

"On Nov. 17 1969 I talked to F.B.I. Agent Mr. Dean of Kankakee Ill. I feel I should of been taken into federal custody then instead of being turned over to the Ill. authoritys to stand trial.

"At 4:30 p. m. on Nov. 17 1969 I was taken in front of a Judge at the Kankakee Court House in which the Judge read off my state charges to me. I asked the Court how they were able to try a federal prisoner and they stated that they had permission from Washington, D. C. to try me. This is on court records in Kankakee Ill.

"After two months in the Kankakee Jail the Court had two doctors talk to me they were Dr. Dash and Dr. Graft they found me mentally incompent to stand trial.

"On Feb. 3 or 4th 1970 I was taken in front of Judge Victor Cardosi of the Kankakee Ill. state court. At this time Judge Cardosi stated in court that I be turned over into the custody of the Ill. mentally health and welfare dept.

"At that point I asked my attorney Mr. Michale Berz of Kankakee Ill. if I was going to be turned over to the U. S. Marshals and he stated that I was not going to be released to the Marshals in fact he stated that I would be taken to a state hospital for treatments. Like the Judge ordered.

"So on Feb. 5 1970 under court order by the State of Ill. I was taken to the Kankakee State Hospital and comitted. At no time was I ever turned over to the Government by the Court or the Police Dept. or the Doctors at the Hospital.

"The U. S. Marshals took it upon thereselfs when they came in that hospital and forcefully removed me from there custody. They did not have permission from the doctors or the court.

"The records at the Kankakee Ill. court will prove that my statements and allegations are true and correct.

"At no time of my trial did Judge Cardosi state that I would be turned over to the U. S. officers. If they were going to release me to the U. S. officers they would have never comitted me to the state hospital to being with. They were well aware that I was a federal prisoner but they had the OK from D. C. to try me. That is what they told me  *  *  *"

Petitioner also forwarded a letter which had been written to him by Michael R. Berz, attorney at law in Kankakee, Illinois, which expressed his "shock" at hearing "that the authorities have disregarded Judge Cardosi's court order and interrupted your treatment." Thereafter, petitioner obtained the assistance of the University of Missouri at Kansas City Legal Assistance Clinic and requested an extension of time in which to file a traverse. The extension was granted. The traverse was filed on June 19, 1970. Therein, petitioner contended that the United States had granted the State of Illinois permission to take custody of petitioner and try him on the state charges. Petitioner also "contended" that the State of Illinois did not give the federal government consent to take petitioner back into its custody from the Kankakee State Hospital.

Assuming all of petitioner's factual allegations and factual contentions to be true, however, petitioner does not state any claim of denial of any federally protected right cognizable in habeas corpus. It is a well established rule that the federal government does not lose jurisdiction of a prisoner because it permits a state to take the prisoner into its custody for the purpose of trying him. Jones v. Taylor (C.A. 10) 327 F.2d 493, cert. denied 377 U.S. 1002, 84 S.Ct. 1937, 12 L.Ed.2d 1051; Section 4085, Title 18, United States Code. It is equally well established that the United States does not lose jurisdiction of such a prisoner

by permitting the state to take him into custody. Konigsberg v. Ciccone (W.D. Mo.) 285 F.Supp. 585, and cases therein cited; Strauser v. Ciccone (W.D.Mo.) 310 F.Supp. 1011. A prisoner who has escaped from the custody of a sovereign remains in the "constructive custody" of that sovereign. Rosenthal v. Hunter (C. A. 10) 164 F.2d 949; 22 C.J.S. Criminal Law § 111, p. 308. Thus, while the temporary custody of the other sovereign may postpone the rights of the first sovereign, it cannot defeat them and jurisdiction is not lost. Strauser v. Ciccone, supra. Thus, although some authorities hold that physical custody of the escaped prisoner is controlling and the sovereign from whose custody the prisoner has escaped must await the due course of the other sovereign's trial and sentence of him (see Strand v. Schmittroth (C.A. 9) 251 F.2d 590; Stewart v. United States (C.A. 10) 267 F.2d 378, cert. denied sub nom. Merriman v. Stewart, 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 83,[1] United States ex. rel. Brewer v. Maroney (C.A. 3) 315 F.2d 687; Kellett v. United States (W.D. Mo.) 162 F.Supp. 791; Application of Woods (N.D.Cal.) 154 F.Supp. 932; United States v. Vann (E.D.N.Y.) 207 F.Supp. 108), federal jurisdiction is not lost.

■■ Petitioner does not dispute the fact that he is in custody under a proper sentence of a federal court. He contends,

however, that federal custody of him is defeasible because the federal government did not wait until the state custody had properly run its course and did not obtain permission of the state of Illinois to re-arrest him and place him in custody under his federal sentence. But even if the manner of asserting custody is unlawful, such pertains only to a possible violation of comity between sovereigns and does not vitiate the legality of a petitioner's otherwise lawful custody in the hands of the second sovereign. Strand v. Schmittroth, supra, 251 F.2d at 610, n. 60 and cases therein cited; Vanover v. Cox (C.A. 8) 136 F.2d 442; Kellett v. United States, supra; United States ex rel. Moses v. Kipp (C.A. 7) 232 F.2d 147; McDonald v. Ciccone (C.A. 8) 409 F.2d 28; Jones v. Taylor, supra; Yant v. Blackwell (C.A. 5) 396 F.2d 808, cert. denied 393 U.S. 1033, 89 S.Ct. 648, 21 L.Ed.2d 577; Krupnick v. United States (C.A. 8) 286 F.2d 45, cert. denied 368 U. S. 878, 82 S.Ct. 125, 7 L.Ed.2d 78. It is well established that the manner in which a prisoner comes into otherwise lawful custody is a matter of which the prisoner has no standing to complain.[2] The petition for habeas corpus herein must therefore be denied. It is therefore

Ordered that the petition herein for habeas corpus be, and it is hereby, denied.

---

1. This case overruled the case of Grant v. Guernsey (C.A. 10) 63 F.2d 163, which had previously negated the principle of the controlling weight of physical custody and adopted the rule that a state criminal proceeding could not be instituted against a federal probationer without federal permission. See also United States v. Pendergast (W.D.Mo.) 28 F.Supp. 601.

2. Although it is not relied on in this case, attention is invited to the principle that, "absent an affirmative allegation to the contrary," it is presumed "that public officers will act lawfully." Stripling v. United States (C.A. 10) 172 F.2d 636, 637. Applying the principle to cases like

that at bar, it is often held that, in the absence of an affirmative allegation to the contrary, the sovereign from which another sovereign takes lawful custody of a prisoner is presumed to have consented to the other sovereign's taking of such custody. Rawls v. United States (C.A. 10) 166 F.2d 532, 533; cf. Hebert v. Louisiana, 272 U.S. 312, 315, 316, 47 S.Ct. 103, 71 L.Ed. 270, 48 A.L.R. 1102. In Opheim v. Willingham (C.A. 10) 364 F.2d 989, the Court assumed that the manner in which custody was taken of the prisoner was unlawful, but held that, even in such a case, the prisoner had no standing to challenge the legality of his otherwise lawful custody.