Jerry **BOWMAN**

v.

Lieutenant Scott E. **WILSON**

Civ.A. No. 81–1389.

United States District Court, E. D. Pennsylvania.

May 13, 1981.

W. Gary Kohlman, M. Shanara Gilbert, Public Defender Service, Washington, D. C., Aaron Beyer, Philadelphia, Pa., for plaintiff.

Dawn MacPhee, Asst. U. S. Atty., Eastern District of Pa., Philadelphia, Pa., for defendant.

MEMORANDUM

SHAPIRO, District Judge.

## I. FACTS

A petition for writ of habeas corpus has been filed by Army Private Jerry Bowman against respondent Navy Lieutenant Scott E. Wilson, Brig Officer at the Naval Confinement Facility, Philadelphia Navy Yard, that challenges Bowman's confinement there while awaiting Army court martial. The issue is whether Bowman's present confinement is legal in the circumstances under which the Army recently obtained custody of Private Bowman; at the time he was seized by military police, Private Bowman was confined to the District of Columbia by Order of the Superior Court. Pursuant to statute, following an acquittal of criminal charges by reason of insanity, Superior Court Judge Samuel Block had committed petitioner to St. Elizabeth's Hospital and later placed him on outpatient status without knowledge of an Army detainer lodged against him in the District of Columbia. On May 6, 1981, we entered an order granting the relief requested in Private Bowman's petition for writ of habeas corpus: Lieutenant Wilson was ordered to deliver Private Bowman to the United States Marshal's Service for return in custody to the District of Columbia for a hearing before Judge Block. In the alternative, we allowed the Army to return Private Bowman to Fort George M. Meade to await such hearing and to remain in such custody until further order of Judge Block. We determined that Private Bowman's present custody is illegal as it violates an outstanding court Order of the Superior Court of the District of Columbia. This memorandum states the findings of fact and conclusions of law in support of that Order.

The facts are largely undisputed. Petitioner is a member of the United States Army assigned to Fort Dix, New Jersey. On September 17, 1979 charges of two violations of 10 U.S.C. § 925 (forcible sodomy), three violations of 10 U.S.C. § 886 (AWOL) and one violation of 10 U.S.C. § 934 (communicating a threat to injure) against Private Bowman were referred for trial by General Court Martial. On October 16, 1979, Private Bowman escaped from confinement prior to court martial.

On March 12, 1980, petitioner was arrested in the District of Columbia; he was subsequently indicted for burglary, assault, and destruction of property.[1] On or about March 13, 1980, District of Columbia authorities informed the Armed Forces Police Detachment, Washington, D.C. that the District had custody of Private Bowman.[2] On March 16, 1980, the Armed Forces Police lodged a detainer concerning Private Bowman with the District of Columbia Detention Facility. On July 30, 1980, petitioner was examined by Dr. John N. Follansbee, a retired Army psychiatrist, formerly Psychiatric Consultant to the United States Army Medical Command, Europe, and Chief of the Psychiatric Clinic at Walter Reed Army Medical Center. Dr. Follansbee determined that Private Bowman had a severe paranoid personality organization and that the alleged criminal conduct was a product of that mental illness.[3] On September 3, 1980, the Honorable Samuel Block of the Superior Court for the District of Columbia, with the consent of the United States Attorney, found petitioner not guilty of all charges by

1. D.C. docket, *United States v. Jerry Bowman* (Exhibit to Amended Petition for Writ of Habeas Corpus).

2. Affidavit of Petty Officer Dahill, Exhibit 3 to Respondent's Return and Answer to Order to Show Cause.

3. Report to Dr. Follansbee, Exhibit to Amended Petition for Writ of Habeas Corpus.

reason of insanity. Under D.C.Code § 24–301(d), which mandates commitment after an acquittal by reason of insanity, petitioner was immediately committed to St. Elizabeth's Hospital for treatment. On November 6, 1980, upon recommendation of the Hospital, again with the consent of the United States Attorney, Judge Block modified his order of commitment to allow conditional release of Private Bowman subject to his compliance with an outpatient treatment plan requiring petitioner to reside with his mother, report to St. Elizabeth's for treatment once a week, attend Alcoholic's Anonymous meetings and participate in the Model Neighborhood Area Community Mental Health Center program. Should Private Bowman's mental condition so warrant or should he violate the conditions of his release, the Order provided for return to inpatient status at St. Elizabeth's Hospital (Appendix 1 to this Memorandum, November 6, 1980 Order of Judge Block).

In December of 1980, the Armed Forces Police learned that petitioner had been acquitted by reason of insanity and was committed to St. Elizabeth's Hospital.[4] The military police contacted Joseph Henneberry, R.N., Director of Forensic Programs at St. Elizabeth's Hospital and learned that Private Bowman, no longer an inpatient, was receiving weekly treatment at St. Elizabeth's. The military police also learned that Private Bowman's next scheduled treatment at St. Elizabeth's was on December 18, 1980. The military police did not communicate with the Superior Court nor did they seek authorization from Judge Block prior to further action. When Private Bowman reported to St. Elizabeth's for his court-ordered outpatient treatment, the military police arrested him. Private Bowman was permitted to telephone his civilian attorney. Although Bowman then submitted to military custody, it is conceded by the Government on the record that he did not consent to his return to Army authorities. No hearing was held prior to or in conjunction with the taking of Private Bowman. He was turned over to Army authorities at Fort George M. Meade, Maryland and returned to Fort Dix for processing on or about December 23, 1980. On December 24, 1980, Private Bowman was taken to the Naval Confinement Facility of the Philadelphia Naval Yard in custody of Naval Lieutenant Scott E. Wilson and imprisoned there.

Sometime prior to February 11, 1981, Judge Block became aware that Private Bowman had been taken from the jurisdiction by military police. On that date Judge Block wrote a letter to Colonel James R. Coker of the Office of the Staff, Judge Advocate at Fort Dix, New Jersey, to insist that petitioner be returned immediately (Judge Block's letter of February 11, 1981, Appendix II to this Memorandum). In that letter, Judge Block stated that "[i]f there were or are any reservations about Mr. Bowman's conditional release in light of the pending military charges, I would be happy to be so informed." Judge Block enclosed with this letter, which was sent to all persons connected with this matter, copies of his Attachment Order filed that same day. The "Attachment Order of Return" (Appendix III to this Memorandum) directed to the United States Marshal, the District of Columbia Chief of Police or any authorized law enforcement officer, stated in part "[y]ou are hereby commanded to seize aforementioned Jerry S. Bowman and return him forthwith to St. Elizabeth's Hospital, Washington, D.C.[5] It is not disputed that the appropriate Army and Naval authorities received copies of this Order, although there is no return of service on the record.

4. Exhibit 3 to Respondent's Return and Answer, Affidavit of Petty Officer Dahill describes what efforts the Army made to monitor the case of *United States v. Jerry Bowman.* Compare the court docket, *United States v. Jerry Bowman* (Exhibit to Amended Petition).

5. The Order of Attachment and Return was based upon D.C.Code § 24–301(i) which applies to a person who "has been ordered confined in a hospital for the mentally ill pursuant to this section and has escaped from such hospital . . . ." A return order issued pursuant to this section is "effective throughout the United States."

Finding this Order not complied with, on March 27, 1981, Judge Block issued a second Order (Appendix IV to this Memorandum), that a hearing be held to review Private Bowman's custodial status. Again, the court ordered, as it had previously directed by its February 11, 1981 Order, that petitioner be returned to the District of Columbia. In the March 27, 1981 Order Judge Block reiterated that the court would not ignore petitioner's military obligations and that the serious nature of the military charges against him would certainly have a bearing upon review of Bowman's conditional release plan. Again the government denies that this Order was properly served; however, it is clear that all military personnel here involved received copies of it. The Order of March 27, 1981 was also ignored.

On April 9, 1981, Private Bowman filed a petition for writ of habeas corpus and also requested injunctive relief against the impending court martial. Respondent filed a motion to dismiss for lack of jurisdiction or, in the alternative, for transfer of this action to the Federal District Court for the District of New Jersey. By Order of April 20, 1981, this court, finding jurisdiction to entertain petitioner's writ in the Eastern District of Pennsylvania, denied respondent's motion and declined to transfer the action to New Jersey. Petitioner was ordered to submit an amended petition with factual allegations numbered and verified and respondent was instructed to submit an answer. On April 24, 1981, evidence was taken and argument heard. Thereafter, the parties submitted the relevant Army Regulations and additional argument thereon requested by the court at that hearing.

While the Superior Court in the District of Columbia and the Federal District Court in Philadelphia addressed the problems raised by the facts underlying this petition,[6] a military court had proceedings preliminary to court martial before it. On February 24, 1981 a hearing was held before the military judge in the matter of *United States v. Bowman.* Defense counsel for Private Bowman made a motion for appropriate relief in the form of an order releasing petitioner to District of Columbia authorities. This motion was denied by the military judge who found that the matter would be resolved by the proceedings in civilian courts without a need for collateral litigation. Pursuant to this determination, the military judge granted Private Bowman a continuance for an appropriate period for civilian courts to resolve the related matters. On March 24, 1981, another continuance for the same purpose was granted. On April 15, 1981, the military judge temporarily stayed the military court proceedings as the petition for writ of habeas corpus was actively before this court.[7]

## II. JURISDICTION

This court has jurisdiction under 28 U.S.C. § 2241 over the subject matter of and the parties to this litigation. The terms under which a writ of habeas corpus may be issued are controlled by federal statute. Under 28 U.S.C. § 2241(c)(1) the writ may be extended to "a prisoner who is in custody under or by color of the authority of the United States." In any petition for habeas corpus, the court is confronted with a threshold question whether the petitioner is "in custody" for purposes of establishing the subject matter jurisdiction of

6. The Bowman matter was also briefly before the District Court for the District of Columbia where petitioner filed for a writ of habeas corpus concurrently with the writ filed in this district. In that action, the United States Attorney having previously agreed to Private Bowman's acquittal, commitment and conditional release before Judge Block, took the position that Judge Block's subsequent Orders need not be complied with and that jurisdiction was not proper in the District of Columbia. The Government urged that the matter should be heard in Philadelphia or in New Jersey. The District of Columbia action was dismissed for lack of jurisdiction. In this district, the Government then argued jurisdiction was lacking except perhaps in New Jersey.

7. Affidavit of Captain Thomas Rittenburg, defense attorney for Private Bowman in the military proceedings (attachment to Amended Petition); transcript in pretrial proceedings, court martial *United States v. Bowman* (Exhibit 5 to Respondent's Return and Answer) at p. 40.

the court. It is clear, however, that Private Bowman, a member of the armed services, who was confined in the Naval Brig, Philadelphia, Pennsylvania at the time his petition was filed and is presently detained there, is "in custody" within the meaning of 28 U.S.C. § 2241(c). *See, Meck v. Commanding Officer, Valley Forge General Hospital*, 452 F.2d 758 (3d Cir. 1971).

The provision of § 2241(a) limiting the power of federal courts to grant a writ of habeas corpus to cases "within their respective jurisdictions" involves inquiry into two issues: whether jurisdiction exists over the person of the petitioner and whether jurisdiction exists over the person of petitioner's custodian. *See, Meck, supra*, at 761. Although no longer critical to a jurisdictional determination since the Supreme Court's decision in *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), this court clearly has jurisdiction over the person of Jerry Bowman who is confined in the Eastern District of Pennsylvania.

The court also has personal jurisdiction over petitioner's custodian, Navy Lieutenant Scott E. Wilson, who is commanding officer in charge at petitioner's place of confinement, supervisor of the conditions of said confinement, and final arbiter, as a practical matter, of all petitioner's requests for privileges, medical or legal assistance. The Government argues that, because Private Bowman is assigned to Fort Dix, the commanding officer of that New Jersey installation is his true custodian and his petition can therefore only be filed in New Jersey. Although Army Private Bowman is confined in a Navy Brig in accordance with an administrative agreement between the two branches of the Armed Forces, Lt. Wilson is the personification of the Army's "presence" in Bowman's life. *See, Strait v. Laird*, 406 U.S. 341, 32 L.Ed.2d 141, 92 S.Ct. 1693 (1972). Bowman had not been in contact with or in the control of the Army, prior to his arrest at St. Elizabeth's Hospital, since October of 1979. Almost immediately from the time of said arrest, Wilson has had direct and total control over Private Bowman. Although perhaps not technically in Bowman's Army chain of command, Wilson is the fundamental link between the Army and Private Bowman and it is Wilson's command, when received from higher, legitimate authority, which governs the physical whereabouts, the release or the confinement of Private Bowman. *See, Strait, supra; Meck v. Commanding Officer, Valley Forge General Hospital*, 452 F.2d 758 (3d Cir. 1971) (where petitioner was physically confined within the Eastern District of Pennsylvania by military authorities there, district court had jurisdiction of the person of petitioner, notwithstanding that his commanding officer may have been outside the district); *Hayes v. Secretary of Army*, 465 F.Supp. 646 (W.D.Pa.1979) (habeas corpus jurisdiction where immediate custodian located in the district).

The Supreme Court in *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), while holding that a prisoner's physical presence within the territorial confines of a district is not an invariable prerequisite to exercise of a district court's habeas corpus jurisdiction, was careful to note that "[n]othing in this opinion should be taken to preclude the exercise of concurrent habeas corpus jurisdiction over the petitioner's claim by a federal district court in the district of confinement." 410 U.S. 499, n.15, 93 S.Ct. 1131, n.15. The Army cannot prevent petitioner from having his petition for a writ of habeas corpus heard in the district wherein he is confined by placing him for an extended period in the total physical control of an officer located in the district and then arguing, under a narrow interpretation of the meaning of chain of command, that the officer, Lt. Wilson, is not the custodian of the person he holds prisoner, Private Bowman.

The requirement of exhaustion of remedies available to Private Bowman in the military courts does not present a problem here for reasons to be discussed in Part III of this Memorandum. Jurisdiction to entertain Private Bowman's petition lies in this judicial district.

## III. STANDING, EXHAUSTION, MERITS and RELIEF

Bowman's complaint involves the circumstances under which he was taken from St. Elizabeth's Hospital when he arrived there for his weekly psychiatric treatment in obedience to a District of Columbia court order. The Government contends that, even though this court has determined that it has jurisdiction over the subject matter of Private Bowman's petition, we should decline to exercise such jurisdiction because Private Bowman lacks standing to raise the violation of principles of comity in regard to the District of Columbia by the United States military. The Government also urges that Private Bowman has failed to exhaust his remedies before the military courts and that intervention to enjoin a court martial is unwarranted under the Supreme Court's decision in *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

The Government argues that derogation of the principles of comity is the only colorable claim, no constitutional right to challenge interstate transfer exists, and no statutory right to a hearing prior to transfer exists where an outpatient under court order is transferred to the custody of the United States Army. A constitutional right to a hearing prior to transfer may not exist in these circumstances, *Feilke v. Governor, State of New Jersey,* 414 F.Supp. 10 (E.D. Pa.1976), but given our disposition of this matter, it is unnecessary explicitly to reach this constitutional question and we decline to do so. The Interstate Agreement on Detainers, 18 U.S.C. Appendix (1976), to which the United States is a party, provides a statutory right to hearing prior to transfer, *Cuyler v. Adams,* —— U.S. ——, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), but by its terms, it is limited to individuals "serving a term of imprisonment" (Art. IV(a)) and is inapplicable to "any person who is adjudged to be mentally ill" (Art. VI(b)). Private Bowman has been acquitted by reason of insanity of charges against him in the District of Columbia.[8]

The Government maintains that, given the Army's undisputed right, at some point, to go forward with Bowman's court martial, Bowman has no standing to complain of the defiance by the military police of three court orders issued by the Superior Court for the District of Columbia. Apparently, the respondent would have Judge Block either file suit against the United States Army in order to determine the legality of Bowman's seizure, or hold some high ranking Army officer in contempt of the court Orders.

Respondent cites *Lindsay v. United States,* 453 F.2d 867 (3d Cir. 1972), *cert. denied,* 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 127 (1972), *United States v. Maroney,* 315 F.2d 687 (3d Cir. 1963), and *Potter v. Ciccone,* 316 F.Supp. 703 (W.D.Mo.1970) for the proposition that the exercise of jurisdiction over a prisoner who has violated the law of more than one sovereign is solely a question of comity not subject to attack by a prisoner. The cited cases do support the general proposition stated by respondent; however, the cases are distinguishable from the instant fact situation in three important respects.

First, the cited cases either implicitly or explicitly rely on the fact that the transferring state had waived its right to jurisdiction of the prisoner in determining that the comity issue was only a concern of the sovereigns involved. In no cited case was the prisoner placed in the dilemma of having conflicting legal obligations to two jurisdictions both of which were actively asserting control over him. In *Lindsay, supra,* a per curiam decision with little discussion of this point, the court cited and relied upon *Ponzi v. Fessenden,* 258 U.S. 254, 260, 42 S.Ct. 309, 310, 66 L.Ed. 607 (1922) stating, "[h]e [the prisoner] may not complain if one sovereignty waives its strict right to

8. Upon acquittal by reason of insanity, D.C. Code § 24–301(d)(1) requires commitment to a mental institution until the superintendent of such institution certifies that the individual confined has recovered his sanity. D.C. § 24–301(e)(1). No certification has yet been filed as to Private Bowman.

exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it." In *U. S. v. Maroney, supra*, the court held that a federal parolee could, during the period of his parole, be taken into custody by state officials and incarcerated for violation of a state parole order antedating his federal conviction. The court, referring to the consent of the federal jurisdiction whose parole he was then serving, stated, "[s]uch a transgressor can hardly be said to have standing to raise a question which is of interest only to the sovereigns involved." *Maroney, supra*, at 688.

In *Potter v. Ciccone, supra*, where state marshals took a federal probation violator from a state mental hospital and the court order providing for his treatment was necessarily violated, the petitioner had been previously convicted of a federal crime and was taken into custody as an escaped federal prisoner, with no objection of state authorities appearing of record. The court noted, "in the absence of an affirmative allegation to the contrary, the sovereign from which another sovereign takes lawful custody of a prisoner is presumed to have consented to the other sovereign's taking of such custody." *Potter, supra*, at 706, n.2.

The instant case dramatically differs. Clearly no waiver of jurisdiction of the District of Columbia's Superior Court is express or implied; rather, the court is actively insisting on Bowman's return. Not only was Judge Block's original treatment order necessarily violated by the taking of Private Bowman, but subsequent to the taking Judge Block made a letter request for Bowman's return, issued an Order calling for a hearing to review Bowman's custodial status and signed an Attachment Order of Return commanding the United States Marshal to seize Jerry Bowman and return him to St. Elizabeth's Hospital.

This does not simply present a more aggravated comity problem with the possibility of confrontation between the United States Marshal's service and the military police; it demonstrates a direct burden and harm upon Private Bowman for which he does have standing to complain. Private Bowman himself is now deemed in violation of Judge Block's treatment and release order and the District of Columbia has not waived the jurisdiction it asserts to command compliance to said order but rather is demanding Private Bowman's return. Furthermore, Judge Block's subsequent Orders, particularly his Order of Attachment and Return, were based upon D.C. Code § 24–301(i)[9] which applies to a person who "has been ordered confined in a hospital for the mentally ill pursuant to this section and has *escaped from such hospital* . . . ." (Emphasis supplied). The Superior Court may have placed Private Bowman in an escape status or deem him in violation of a court order and one who has fled the jurisdiction. These Superior Court Orders may have serious legal implications for Private Bowman now and in the future but his present incarceration makes it impossible for him to clarify his status.[10] This direct harm to the petitioner himself distinguishes the cases cited by the Government where the transfer was consented to or not objected to by the jurisdiction from which the prisoner was transferred. Another distinction is that in the Third Circuit cases relied upon, unlike this case, appropriate procedures were followed in transfer.

9. D.C.Code § 24–301(i) provides:

> When a person has been ordered confined in a hospital for the mentally ill pursuant to this section and has escaped from such hospital, the court which ordered confinement shall, upon request of the government, order the return of the escaped person to such hospital. The return order shall be effective throughout the United States. Any Federal Judicial Officer within whose jurisdiction the escaped person shall be found shall, upon receipt of the return order issued by the committing court, cause such person to be apprehended and delivered up for return to such hospital.

10. We refuse to accept the Government's contention that Judge Block's Order need not be complied with because it is inapplicable to the facts of this case, Private Bowman not being an escapee, for reasons discussed *infra*, at pp. 412 and 413.

Finally, the opinions cited by the Government for their no standing argument hold that it is a "transgressor" or "prisoner" who has no standing to complain of a transfer to answer other charges in another jurisdiction. Private Bowman was neither when transferred. Bowman was acquitted of criminal charges in the District of Columbia by reason of insanity although immediately committed to St. Elizabeth's Hospital pursuant to D.C.Code § 24–301(d)(1). When conditionally released in accordance with D.C.Code § 24–301(e), he remained subject to the court's jurisdiction and to the detailed conditions of its release order. That Bowman remains under the Superior Court's control is emphasized by Judge Block's concern that Private Bowman has departed from the jurisdiction without leave of court.

A second reason Private Bowman has standing to challenge his present custody is his alleged right to psychiatric treatment. The restrictions the Superior Court placed upon Private Bowman, an individual acquitted of crime, are only justified by treatment for the mental illness which precipitated the anti-social behavior concomitantly provided. *See, United States v. Ecker,* 543 F.2d 178 (D.C.Cir.1976); *In the Matter of Nelson,* 408 A.2d 1233 (D.C.App.1979). The seizure of Private Bowman interrupted treatment in which he, an individual acquitted of crime but nonetheless subject to significant restrictions on his personal liberty, had an important stake. Bowman testified that he requested psychiatric help; while Lt. Wilson's testimony denying that such a request was made is credible, it is undisputed that no psychiatric treatment has been provided by his captors. Bowman's psychiatrist at St. Elizabeth's Hospital testified that psychotropic medication had been prescribed for Bowman at the time he was taken into custody by military police. Lt. Wilson testified that he did not inquire as to the nature of Bowman's treatment at St. Elizabeth's nor did he determine whether Bowman was receiving medication there. It may, therefore, be inferred that Bowman's drug therapy has been interrupted by his apprehension by the military police. Serious harm to Bowman may result from this course of events.

■ Private Bowman's status as an involuntary committee following *acquittal* on criminal charges differs from that of a convicted prisoner serving a sentence or a parolee. A parolee has no absolute right to parole nor does a sentenced prisoner have an absolute right to remain in a particular prison, to participate in a work-release program or to the eradication of every possible obstacle to rehabilitation. *See, Cobb v. Aytch,* 643 F.2d 946 (3d Cir. 1981) (the Court distinguishes between rights of pretrial and post-trial detainees in a transfer situation, the former having greater rights to oppose transfer); *X v. Brierley,* 457 F.Supp. 350 (E.D.Pa.1978); Cook, Constitutional Rights of the Accused, Post-Trial Rights, (1976) § 34 at p. 92. Private Bowman is neither a sentenced prisoner nor a parolee. Having been acquitted, his rights are comparable to those of pretrial detainees recognized in *Cobb v. Aytch, supra.*

Private Bowman, following acquittal by reason of insanity, was by statute committed for treatment; he can and does assert a right to the treatment for mental illness which was the justification for his involuntary commitment. We do not hold that an out-patient in Private Bowman's position has an unconditional right to remain on a court-ordered release program regardless of what violations of federal or state law he may have committed in the past or may commit in the future. We do not hold that the Army cannot obtain custody of Private Bowman while he is on conditional release. We find only that the particularized harm to Private Bowman in these unusual circumstances gives him standing to challenge his present custody.

■ The court recognizes the gravity of even the limited intervention with a pending court martial which is contemplated by this Memorandum; however, two major concerns which generally counsel against such intervention are present to a lessened degree in the particular circumstances of this case. First, the requirement of exhaus-

tion of remedies within the military is obviated by the military court's grant of a continuance of the court martial proceedings for a limited time, pending decision by civilian courts of the litigation arising out of Judge Block's Orders, and its willingness to defer to the Orders of an appropriate civilian court. The transcript of court martial pretrial proceedings (Exhibit 5 to Respondent's Return and Answer) reads, in relevant part, as follows:

> If it is determined in a proper forum that—and I would presume since Judge Block has issued his order that it will be determined one way or another—if it is determined in the proper forum that the accused is not properly in military jurisdiction, then I presume an appropriate court, and the Army authorities in deference to an appropriate court, will turn him over to the civilian authorities, which will resolve the problem. If it is decided the other way, then he will remain in Army custody and the problem will be alleviated. So it seems to me that we would be pursuing this—pursuing collateral litigation concerning the same subject matter which is already before Judge Block's court and is a matter of litigation in that court. Now, based on that, Counsel, however, I am willing to grant you a continuance for a reasonable period of time in order to allow that matter to be decided, and if you wish I will be happy to entertain a motion to that end. (Transcript at p. 40).

The continuance was thereafter granted. At a later hearing, military proceedings were temporarily stayed as the petition for writ of habeas corpus was actively before this court.[11] Thus, the military tribunal, in recognition of the unusual situation created by Judge Block's Orders and the Army's failure to comply therewith, has expressed its willingness to defer to the ruling of an appropriate civilian court while granting the defense a continuance to allow for such resolution; the military judge's ruling evidences a sensitivity to the principles of comity and a recognition of the gravity of this matter uncharacteristic of Government and Army response to these proceedings.

Respondent has characterized the military judge's order as simply indicating that the military would await Judge Block's efforts to serve the Order of Attachment and allow the matter to come to a head in that fashion. We do not believe that the military judge's resolution of this matter contemplated the necessity of a physical confrontation between United States Marshals and military police over who should have custody of Private Bowman. The continuance ordered by the military judge and his deferral to the ruling of an appropriate civilian court makes further exhaustion of remedies within the military unnecessary.

The second concern regarding district court intervention is expressed in *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), which held that when a serviceman charged with crimes by military authorities can show no harm other than that attendant to resolution of his case in the military court system, a federal district court must refrain from intervention by injunction or otherwise. *See, Hodges v. Brown*, 500 F.Supp. 25 (E.D.Pa.1980).

However, Private Bowman has shown some harm other than that attendant to resolution of the court martial proceedings; it is the very harm which gives Private Bowman standing to challenge his custody. Private Bowman presently faces serious legal difficulties in the District of Columbia because of his failure to remain in that jurisdiction and his violation of court Orders entered there. Private Bowman has also been deprived of court-ordered psychiatric care for a period of over three months. The relief here requested is not permanent injunction of a court martial, the situation presented in *Schlesinger, supra*, but rather a return of petitioner to the District of Columbia to clarify his jurisdictional status and perhaps to facilitate the eventual disposition of military charges against petitioner. Thus, the intervention is of a significantly

11. Affidavit of Captain Thomas Rittenburg, defense attorney for Private Bowman in the military proceedings (Attachment to Amended Petition).

lesser magnitude than the situation before the Court in *Schlesinger, supra.* Finally, the military court has indicated a willingness to allow the civilian courts to determine this matter and to abide by such a determination. Intervention does not violate the principles of comity under the *Schlesinger* doctrine. The court has the authority to act and fashion a reasonable remedy in aid of its jurisdiction.

■ We find it untenable that the Army should ignore or defy Orders pursuant to statute of the Superior Court of the District of Columbia and place Private Bowman in conflict with a jurisdiction actively asserting its authority over him when he is unable to rectify the situation because he is in Army custody. The Government asserts that Judge Block's Orders need not be complied with because the statute pursuant to which the Orders were issued, D.C.Code § 24-301(i), is inapplicable to the facts of this case; it contends that Private Bowman is not an "escapee" and that the statute requires that the Government request that the Orders be issued. This court will not pass upon the legality of Judge Block's Orders. *See, Commonwealth of Pennsylvania v. Local Union 542, Int'l. Union of Operating Eng'rs.* (Appeal of Freedman), 552 F.2d 498, 505-06 (3d Cir.), *cert. denied*, 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977) (on appeal of attorney's criminal contempt for disobeying order of trial judge not to state reasons for objection on record, court refused to consider merits of order that was violated). Without suggesting that the Orders were in any way improvidently issued, it is clear that even a misguided court order, until rescinded or reversed, must be obeyed. *See, Walker v. Birmingham*, 338 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). As recently stated by the Third Circuit in *United States v. Stine*, 646 F.2d 839 at p. 845 (3d Cir. 1981):

> It is fundamental to our legal system that 'all orders and judgments of courts must be complied with promptly. If a person to whom a judge directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.' *Maness v. Myers*, 419 U.S. 449, 458 [95 S.Ct. 584, 590, 42 L.Ed.2d 574] (1975). A person who makes a private determination that an order is incorrect, or even unconstitutional, may properly be convicted of criminal contempt for violation of the order even if his or her private determination is later proven correct in the courts. *Walker v. City of Birmingham*, 388 U.S. 307 [87 S.Ct. 1824, 18 L.Ed.2d 1210] (1967); *Howat v. Kansas*, 258 U.S. 181 [42 S.Ct. 277, 66 L.Ed. 550] (1922).

Certainly colorable authority for the issuance of Judge Block's Orders was present. While one might wonder if a judge would hold in contempt one forcibly rather than voluntarily removed from the jurisdiction, counsel for the Government should understand that possibility because it was asserted at the hearing before this court that a serviceman arrested and confined involuntarily by civilian authority is nonetheless a deserter by Army Regulations. It has been argued that the court martial ought to go forward at this time and Private Bowman returned to the District of Columbia thereafter. But every day of Private Bowman's classification as an escapee in defiance of court orders exacerbates his difficulties with the Superior Court of the District of Columbia. Every day the Superior Court Order for Bowman's return, outstanding since February 11, 1981, is ignored makes mockery of the principles of comity the Government purports to espouse.

We also have considered that the Army has failed to follow its own Regulations in this matter. Army Regulation 190-9 dated July 17, 1980 provides the policies and procedures for the apprehension and return to military control of Army absentees or deserters. AR 190-9, Section II, ¶ 1-6a provides:

> 1-6. General. a. An absentee or deserter *in the custody of civilian authorities or being treated in a civilian hospital* will be returned to Army custody as soon as practicable. Military authorities will strive to effect such return within 48

hours after being notified of the absentee's or deserter's whereabouts. (See para 2–7 or para 3–4.) (Emphasis supplied).

Paragraph 3–4, incorporated by reference therein, in part provides:

3–4. Deserters charged with or convicted of a civil offense. a. When *a deserter is in civil custody* and is charged with or convicted of a civil offense, the nearest provost marshal or law enforcement staff officer will be notified. A full report of the member's status will be given to the designated commander (para 1–3d) within whose geographical area of responsibility the member is located. He will—

(1) Require the provost marshal to place a detainer (para 1–3e) with the civil authorities.

(2) Submit a report to the commander, USAEREC, ATTN: PCRE–RD Fort Benjamin Harrison, IN 46249 using a DA Form 3836.

(3) Take action to have the deserter assigned to the PCF serving the geographical area in which the member is located.

b. When the deserter is assigned to a PCF, the PCF commander will access him into the strength of the Army and monitor his status during the period of confinement. Upon the member's release from custody, the PCF commander will take the actions outlined in chapter 4 and in procedure 5–25, DA Pam 600–8.

c. *In some cases, the deserter will be restricted (rather than confined) by court authority from leaving its geographical area. The designated commander will then direct that the member be assigned to a unit within the area in which the member is restricted. If a PCF is located in this area, the member will be transported and accessed to the PCF for accountability.* The commander appointed to account for the member will take the actions, outlined in chapter 4 and procedure 5–25, DA Pam 600–8. *Once the restriction is lifted, the appointed commander will get assigned instructions for the member.* (See para 4–8.) This action will be taken only if the member is otherwise qualified for retention in the Army.

(Emphasis supplied).

Together, these Regulations indicate certain procedures to be followed with regard to absentees or deserters committed to civilian hospitals and with regard to deserters "restricted (rather than confined) by court authority." Private Bowman was in both of these categories during the period following his acquittal in the District of Columbia. There is no indication in this record that the steps outlined in paragraph 3–4 were followed, that a provost marshal reported to the appropriate commander, that Bowman was assigned to the PCF serving the geographical area where he was located, that the PCF commander monitored petitioner's status,[12] or that procedures relevant to a deserter restricted by court order were followed. A close monitoring of Private Bowman's status, a consideration of whether not only confinement but restriction by civilian authorities was contemplated by relevant Army Regulations, and some communication with the Superior Court which had retained jurisdiction of Private Bowman might have prevented the difficulties later encountered by the Army, the Navy, the Superior Court for the District of Columbia, the federal district courts for the District of Columbia and the Eastern District of Pennsylvania, and Private Bowman. We reject the Government's view that paragraph 3–4 does not apply because Private Bowman was not charged with or convicted of a civil offense when seized. We view Private Bowman as a deserter charged with a civil offense, then confined and restricted by civil authority as a direct result of the civil criminal charges. This is a specific situation to which the Regulations are seemingly addressed even as they generally seek to avoid the friction which has developed here.

12. The Army was unaware of the acquittal and commitment until sometime in early December although it took place on September 3, 1980 (Superior Court Docket in *United States v. Bowman*, attachment to Amended Petition for Writ of Habeas Corpus).

It is true that the Army's detainer may not have been respected. Judge Block, however, was unaware of it until after Bowman was seized by military police. The United States Attorney for the District of Columbia agreed to Judge Block's acquittal, commitment, and conditional release of Private Bowman without informing Judge Block of the Army detainers; now the United States Attorney unaccountably takes the position that these detainers somehow justify ignoring court orders issued pursuant to a Congressional statute granting them national effect.

Under these circumstances we find that we have both the authority and the obligation to impose an accommodation upon the interested parties which they could have found for themselves. The relief we order, return of Private Bowman to the District of Columbia for hearing before Judge Block, puts this matter in a posture where the harm rightfully alleged can be rectified. Neither this court nor the District of Columbia Superior Court, nor perhaps even the petitioner himself, disputes the Army's right to court martial Private Bowman for the charges brought against him. There is no reason to presume that Judge Block will not give careful consideration to the new information before him, including the nature of the charges against Private Bowman, his previous escape from custody, and the risk that petitioner might flee the jurisdiction. Judge Block has indicated his willingness to be informed of the facts of record and to consider the Army's claims in re-evaluating his prior conditional release of Private Bowman. The hearing will clarify Private Bowman's status between the Army and the District of Columbia, alleviate the harm to him caused by prior confusion, and create a forum for communication among the parties.

In an analogous area, the Supreme Court has ruled, as a matter of statutory construction, that a prisoner incarcerated in a jurisdiction that has adopted the Extradition Act is entitled to a pretransfer hearing before being transferred to another jurisdiction pursuant to the Interstate Agreement on Detainers, to which the United States is a party. While we do not find that the Detainer Agreement applies to the instant case, since *Cuyler v. Adams*, —— U.S. ——, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), a hearing would be consistent with ordinary procedure and warranted in the extraordinary situation presented to us.

Therefore, we have ordered the delivery of Private Bowman to the District of Columbia for resolution of this matter. Mindful of the military's legitimate security concerns, our order allows for Private Bowman's return in custody, and if prompt request for a hearing before Judge Block is made, petitioner may remain in Army custody until such hearing is held. The court, having heard and determined the facts, has retained jurisdiction as law and justice requires.

## APPENDIX I

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

Criminal Division – Felony Branch

UNITED STATES OF AMERICA :
:
v. : Criminal Case No. F 1191–80
:
JERRY S. BOWMAN :

ORDER

This matter comes before the Court for consideration of an outpatient treatment plan recommended for the defendant by the staff of St. Elizabeths Hospital. In his letter of October 31, 1980, Joseph Henneberry, Director of the Division of Forensic Programs, states that in the opinion of the staff, defendant has recovered sufficiently from his mental illness to be granted a conditional release without danger to himself or others.

From the testimony presented at a hearing held on October 21, 1980, and there being no objection by counsel for defendant or the Government, it is this 6th day of November, 1980,

ORDERED, that in accordance with the recommendation of the staff of St. Elizabeths Hospital, the defendant, Jerry S. Bowman is hereby conditionally released from custody, pursuant to D.C.Code § 24–301(e) (1973), subject to the following conditions:

1. Defendant must reside with his mother, Mrs. Prather, who lives at 4302 Rail Street, Capitol Heights, Maryland;

2. Defendant must report to the Outpatient Department, St. Elizabeths Hospital, once a week until such time as the Outpatient Department Staff chooses to alter the frequency of his visits;

3. Defendant must attend "Alcoholics Anonymous" meetings as arranged by the Outpatient Department Staff and in the event of any failures to attend, the Outpatient Department Staff is to be informed;

4. Defendant must participate in the Model Neighborhood Area Community Mental Health Center program; and

5. If, in the estimation of the Outpatient Department Staff, defendant's mental condition warrants, or if he violates the conditions of this release, defendant is to be returned to inpatient status at St. Elizabeths Hospital and the Court is to be notified forthwith by the Outpatient Department Staff.

(s) Samuel B. Block
SAMUEL B. BLOCK, JUDGE

Copies to:

Earle P. Zack, Esquire
915 15th Street, N.W., Suite 600
Washington, D.C. 20005

AUSA John McDermott
U. S. Attorney's Office
Felony Trial

Joseph Henneberry, R.N.
Director, Division of Forensic Programs
St. Elizabeths Hospital

Dr. Surrey
Outpatient Department
St. Elizabeths Hospital

Ms. Slade
Model Neighborhood Area
Community Mental Health Center

Dr. Abudabbeh
John Howard Pavilion
St. Elizabeths Hospital

APPENDIX II

Superior Court of the District of Columbia

Washington, D. C. 20001

Samuel B. Block
Judge

February 11, 1981

Colonel James R. Coker
Office of the Staff, Judge Advocate
Headquarters, Fort Dix
Fort Dix, New Jersey 08640

Re: Jerry S. Bowman
Criminal Case No. F 1191–80

Dear Colonel Coker:

It has come to my attention that on December 18, 1980, while under Court ordered commitment, Jerry S. Bowman was seized by members of the military police and taken from this jurisdiction. I must insist that he be returned immediately.

On September 3, 1980, following a finding of Not Guilty By Reason of Insanity in the above-captioned case, I committed Mr. Bowman into the custody of St. Elizabeths Hospital, Washington, D. C., pursuant to D.C.Code § 24–301(d)(1). On November 6, 1980, after a period of inpatient care and upon the recommendation of the Hospital, I ordered that Mr. Bowman be conditionally released subject to his compliance with an outpatient treatment plan. Lest there be any confusion, in no way can Mr. Bowman's conditional release be understood to have been a discharge from the custody of either St. Elizabeths Hospital or this Court.

The release of a person committed under D.C.Code § 24–301(d)(1) is governed by D.C. Code § 24–301(e). It provides for unconditional release when the Hospital and the Court find that the person (1) has recovered his sanity, (2) will not in the reasonable future be a danger to himself or others, and (3) is entitled to unconditional release. Section 301(e) also provides that when in the judgment of the Hospital, "a person confined under subsection (d) . . . is not in such condition as to warrant his unconditional release, but is in a condition to be conditionally released under supervision . . . [the court may] . . . order the release of such person under such conditions as the Court shall see fit. . ." It is under this latter provision that Mr. Bowman was conditionally released by this Court so that his commitment and treatment could continue under the appropriate level of restriction.

It is unclear by what authority the military police thought they had the right to seize Mr. Bowman. However, it is very clear that they had none, that Mr. Bowman was properly under the supervision of this Court and should not have been taken anywhere inconsistent with his conditional release. If there were or are any reservations about Mr. Bowman's conditional release in light of pending military charges, I would be happy to be so informed. However, I cannot tolerate the summary disregard for the orders of this Court shown by the military police on December 18, 1980.

I have issued a Forthwith Attachment Order of Return for Mr. Bowman's return to St. Elizabeths Hospital and expect it to be honored. While I am sure the Army would prefer to dispose of its charges against Mr. Bowman at this time, I cannot allow it. Mr. Bowman is under this Court's supervision and cannot be taken, by any detainer or otherwise, until that period of supervision is completed.

Thank you for your attention and I trust that this matter can be quickly resolved. If you have any questions, please call my chambers at (202) 727–1570.

Sincerely yours,

(s) Samuel B. Block

Samuel B. Block

Judge

Encl. (Copy of 2/11/81 Forthwith
Attachment Order of Return)

cc: Captain Daniel Wright (w/encl)
Office of the Staff, Judge Advocate
Headquarters, Fort Dix
Fort Dix, New Jersey 08640

Captain Thomas Rittenburg (w/encl)
U. S. Army Trial Defense Service
Fort Dix Field Office
Fort Dix, New Jersey 08640

Major Paul East (w/encl)
Headquarters, Personnel Control Facility
Fort Dix
Fort Dix, New Jersey 08640

Lt. Wilson, Commandant (w/encl)
Naval Confinement Facility
Philadelphia Naval Yard
Philadelphia, Pennsylvania

Linda Ravdin, Esquire (w/encl)
419 7th Street, N.W.
Washington, D.C. 20004

Earle P. Zack, Esquire (w/encl)
805 King Street, Suite 400
Alexandria, Virginia 22314

Joseph Henneberry, R.N. (w/encl)
Director
Division of Forensic Programs
St. Elizabeths Hospital
Washington, D.C. 20032

John McDermott (w/encl)
Assistant U. S. Attorney
Felony Trial Division
500 Indiana Avenue, N.W.
Washington, D.C. 20001

---

## APPENDIX III

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CRIMINAL DIVISION

FELONY BRANCH

UNITED STATES OF AMERICA
DISTRICT OF COLUMBIA

vs

JERRY S. BOWMAN

Criminal No: F 1191-80

### FORTHWITH ATTACHMENT
### ORDER OF RETURN

TO: UNITED STATES MARSHAL
CHIEF OF POLICE OF THE DISTRICT OF COLUMBIA
OR ANY AUTHORIZED LAW ENFORCEMENT OFFICER

On September 3, 1980, Jerry S. Bowman, a 30 year old Black Male, was committed into the custody of St. Elizabeths Hospital, Washington, D.C., by this Court, pursuant to

D.C.Code § 24–301(d)(1). On December 18, 1980, while on conditional release from St. Elizabeths and still under the supervision of this Court, Jerry S. Bowman was seized without right by unknown members of the military police. It appears that he is now confined at the Naval Confinement Facility, Philadelphia Naval Yard, Philadelphia, Pennsylvania.

You are hereby commanded to seize aforementional Jerry S. Bowman and return him forthwith to St. Elizabeths Hospital, Washington, D.C. for the completion of his commitment in the above-captioned case.

Here of fail not, and have then this Writ, so indorsed as to show how you have executed it.

WITNESS, the Honorable Judge of the Superior Court of the District of Columbia, under the seal of said Court, this 11th day of February 1981.

By: Samuel B. Block
Judge, Superior Court of the District of Columbia

RETURN

Received the within Order of Return the ______ day of ____________ 19 , and executed same the ______ day of ____________ 19 .

By: ______________________

______________________

APPENDIX IV

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Criminal Division – Felony Branch

UNITED STATES OF AMERICA :
:
v. : Criminal Case No. F 1191–80
:
JERRY S. BOWMAN :

ORDER

In view of recent developments in the above-captioned case the Court hereby orders that a hearing be held to review defendant's custodial status.

On September 3, 1980, following a finding of not guilty by reason of insanity in this case, defendant was committed to St. Elizabeth's Hospital, Washington, D. C., pursuant to D.C.Code § 24–301(d)(1) (1973). On November 6, 1980, after a period of inpatient care and upon the recommendation of the Hospital and the authorization of the Court, defendant was conditionally released subject to his compliance with an outpatient treatment plan. D.C.Code § 24–301(e) (1973). *U. S. v. Ecker*, 177 U.S.App. D.C. 31, 543 F.2d 178 (1976). This treatment plan was effectively terminated on December 18, 1980, when defendant was seized by unknown members of the military police, pursuant to outstanding military charges against defendant. Since that time defendant has been confined at the Naval Confinement Facility, Philadelphia Naval Yard, Philadelphia, Pennsylvania.

On February 11, 1981, the Court issued a Writ of Attachment Order of Return for defendant which described his status and his seizure by the military police. Subsequently, military authorities were also asked to return him for the completion of his commitment. It has been suggested that this commitment has little significance because defendant was on conditional release when he was seized. The Court holds the opposite opinion. When defendant was seized there was no authorization by the Court for any change in his status. Therefore, the seizure violated the November 6, 1980 Order for Conditional Release and Treatment and disregarded the requirements of D.C.Code 24–301(e) (1973). *Hough v. U. S.* 106 U.S.App.D.C. 192, 196, 271 F.2d 458 (1959). Also ignored was the fact that commitment under D.C.Code 24–301 (1973) is for the purpose of treatment which must be provided under the least restrictive alternative. *Ecker*, 177 U.S.App. D.C. at 52, 543 F.2d 178; *In the Matter of Nelson*, 408 A.2d 1233, 1238 (D.C.App.1979). For these reasons it can hardly be disputed that conditional release and treatment is an integral part of the commitment ordered by this Court (See e. g., *Ecker*, at 44 and 52, 543 F.2d 178, *Hough* 106 U.S.App.D.C. at 196, 271 F.2d 458) and cannot be discounted simply because it was not a more restrictive level of custody.

Defendant now has been without his Hospital proposed and Court ordered treatment for three months. At this point the Court cannot be sure of the consequences, but conversations with counsel and letters received from defendant and his mother indicate a possible serious deterioration of his mental as well as physical condition. The Court would be irresponsible if it ignored these facts and simply forgot that it had committed defendant to St. Elizabeth's Hospital and was to have retained authority over him thereafter. This is not to say, for instance, that the Court will instead ignore defendant's present military obligations. The serious nature of his pending military charges certainly has a bearing on a review of whether defendant's conditional release plan "provide[s] treatment and cure for the individual in [a] manner which affords reasonable assurance for the public safety." *Ecker*, 177 U.S.App.D.C. at 36, 543 F.2d 178, quoting *Hough*, 106 U.S.App.D.C. at 195, 271 F.2d 458. However, beyond this concern for defendant's own condition, the fact that there has been such disregard for the procedures of this court and, even more importantly, such disregard for the integrity of the commitment process, requires court review of the status of this case.

Accordingly, it is this 27th day of March, 1981,

ORDERED that, as directed by the Court in its February 11, 1981 Writ of Attachment Order of Return, defendant be returned immediately to St. Elizabeth's Hospital for evaluation and treatment; and it is

FURTHER ORDERED that, upon completion of the St. Elizabeth's Hospital evaluation, a hearing be held to review defendant's custodial status, at which time all

interested parties may present information relevant to defendant's status.

(s) Samuel B. Block
SAMUEL B. BLOCK, JUDGE

Copies to:

Linda Ravdin, Attorney
419 7th Street, N.W., Suite 201
Washington, D.C. 20004
202/638-6700

AUSA John O. Birch
U. S. Attorney's Office
Civil Division
U. S. District Courthouse
Washington, D.C. 20001
202/633-4975

Colonel James R. Coker
Office of the Staff, Judge Advocate
Headquarters, Fort Dix
Fort Dix, New Jersey 08640
609/562-2369

Captain Thomas Rittenburg
U. S. Army Trial Defense Service
Fort Dix Field Office
Fort Dix, New Jersey 08640
609/562-2373

Joseph Henneberry, R.N.
Director, Division of Forensic Programs
St. Elizabeth's Hospital
Washington, D.C. 20032
202/574-7494